WILLIAM HAINES ET AL. *v.* ZONING BOARD OF APPEALS OF THE TOWN OF OXFORD
(9596)

NORCOTT, LAVERY and LANDAU, Js.

Argued September 30—decision released December 3, 1991

*Gerald M. Gallant,* for the appellant (defendant).

*Joseph E. Sakal,* for the appellees (plaintiffs).

NORCOTT, J. The defendant zoning board of appeals of the town of Oxford appeals from the judgment of the trial court sustaining the plaintiffs' appeal from the board's denial of their variance application. On appeal, the defendant argues that the trial court (1) improperly based its decision on the defendant's prior approval of a separate variance application filed by a different applicant pertaining to another parcel of land on the same road, (2) failed to review the entire record in order to find a basis for the board's action, (3) ignored the issue of self-inflicted hardship, and (4) improperly placed upon the defendant the burden of proof.

The facts pertinent to this appeal are as follows. The property involved is a 3.36 acre lot (no. 81) located on Hemlock Trail, an unapproved private dirt road less than fifty feet wide in the town of Oxford. The plaintiffs had planned to build a residence on their lot and to use Hemlock Trail as the access road. The trial court noted in its memorandum of decision that "Hemlock Trail is a private right-of-way running northerly from Little Punkup Road, a public highway. Lot 81 is about 2000 feet north of the point where Hemlock Trail and Little Punkup Road meet. Hemlock Trail varies in width from 12 to 45 feet." There are seven existing residences on the road, which is located in a one-half acre residential zone.

Article 6, section 4, of the Oxford zoning regulations[1] requires that a private right-of-way be fifty feet or more

---

[1] Article 6 of the Oxford zoning regulations provides in pertinent part: "SECTION 4. Lot Area, Shape, Frontage, and Access. Each lot shall have a minimum land area of one and one-half (1 1/2) acres and shall be of such shape that a square with 160 feet on each side will fit on the lot. Each lot shall also have a frontage of 175 feet or more on a public street or properly bonded subdivision street or shall have an easement of access or private right-of-way at least 25 feet in width to a public street or properly bonded subdivision street. Only one lot may depend upon an easement of access or private right-of-way for exclusive access except that [if] the easement of access or private right-of-way is 50 feet or more in width to a public street

in width if the right-of-way is used as the only means of access to more than one lot. Hemlock Trail did not meet the requirement of the regulations that a private right-of-way be fifty feet wide where there are two lots. Thus, access became the plaintiffs' basic problem. Accordingly, they filed an application for variance, seeking relief from the frontage and access requirements of the regulations.

The plaintiffs principally argued before the board that (1) seven residential lots already use Hemlock Trail for exclusive access, (2) they, with the support of some of these residents, were willing to pay for the improvement and maintenance of the road, and (3) in 1984 the defendant had granted the same variance as presently requested by the plaintiffs to Thomas Markovich after Markovich had been initially denied a certificate of approval to rebuild a residence on Hemlock Trail that had burned down nine years before he applied for a variance.[2]

On May 8, 1989, the board failed to obtain a quorum and the matter of the plaintiffs' application was continued for a special meeting to be conducted May 15, 1989. At that meeting, five members were present, but only four acted on the application. A fifth member, John Passander, was present but abstained from participating in the matter. After a public hearing, the board initially voted to approve the application by a three to one vote, and then unanimously voted to deny the application without prejudice since the four affirmative votes, necessary for variance approval pursuant to General Statutes § 8-7 were lacking.[3] The vote to deny the appli-

or properly bonded subdivision street two lots may depend on such easement or right-of-way for exclusive access or shall have equivalent frontage or equivalent access to a properly bonded subdivision street."

[2] The proposed house was never fully constructed because of the death of the then owner of the lot.

[3] General Statutes § 8-7 provides in pertinent part: "The concurring vote of four members of the zoning board of appeals shall be necessary to reverse

cation without prejudice allowed the plaintiffs the opportunity to resubmit their application when five members could act on it without any abstentions. The plaintiffs appealed the denial of their variance to the trial court, which sustained the appeal. Thereafter, this appeal ensued.

In the present appeal, the defendant principally argues that the trial court improperly used the Markovich variance as the basis for its action sustaining the plaintiffs' appeal, and that the court ignored the matter of the plaintiffs' self-created hardship. We agree.

The ultimate issue in this appeal, of course, is whether the trial court correctly concluded that the defendant board's denial of the variance was arbitrary, illegal and an abuse of its discretion. *D & J Quarry Products, Inc.* v. *Planning & Zoning Commission,* 217 Conn. 447, 453, 585 A.2d 1227 (1991); *Schwartz* v. *Planning & Zoning Commission,* 208 Conn. 146, 152, 543 A.2d 1339 (1988); *Whittaker* v. *Zoning Board of Appeals,* 179 Conn. 650, 654, 427 A.2d 1346 (1980). Courts must not substitute their judgment for that of the board. *Whittaker* v. *Zoning Commission,* supra; *Koproski* v. *Zoning Board of Appeals,* 162 Conn. 635, 636, 295 A.2d 564 (1972); *Fernandes* v. *Zoning Board of Appeals,* 24 Conn. App. 49, 53, 585 A.2d 703 (1991); *Horn* v. *Zoning Board of Appeals,* 18 Conn. App. 674, 676–77, 559 A.2d 1174 (1989); *Molic* v. *Zoning Board of Appeals,* 18 Conn. App. 159, 164, 556 A.2d 1049 (1989).

A zoning board of appeals derives its authority to grant variances from General Statutes § 8-6 (3), which

any order, requirement or decision of the official charged with the enforcement of the zoning regulations or to decide in favor of the applicant any matter upon which it is required to pass under any bylaw, ordinance, rule or regulation or to vary the application of the zoning bylaw, ordinance, rule or regulation.''

provides in pertinent part that the board may grant variances "with respect to a parcel of land where, owing to conditions especially affecting such parcel but not affecting generally the district in which it is situated, a literal enforcement of such bylaws, ordinances or regulations would result in exceptional difficulty or unusual hardship so that substantial justice will be done and the public safety and welfare secured." It is axiomatic that a variance is granted with respect to a particular piece of property; see *Garibaldi* v. *Zoning Board of Appeals,* 163 Conn. 235, 239, 303 A.2d 743 (1972); and that the hardship peculiar to a particular piece of property must arise "from a condition different in kind from that generally affecting properties in the same zoning district and must be imposed by conditions outside the property owner's control." (Citations omitted.) *Stillman* v. *Zoning Board of Appeals,* 25 Conn. App. 631, 636, 596 A.2d 1 (1991); see also 3 R. Anderson, American Law of Zoning (3d Ed. 1986) § 20.26 ("[t]he fact that one or more variances have been granted to landowners near the site of a proposed variant use does not constitute proof of undue hardship"). Each case must be decided on its own merits, and it follows that "[a] variance may not be justified on the ground that other variances had previously been issued in the immediate area." 3 E. Yokley, Zoning Law and Practice (4th Ed. 1979) § 21-11; see 3 R. Anderson, American Law of Zoning (3d Ed. 1986) § 20.26 ("[t]he granting of a variance to one landowner does not require the granting of a similar variance to a second owner in the same neighborhood"); see also *Dlugos* v. *Zoning Board of Appeals,* 36 Conn. Sup. 217, 222, 416 A.2d 180 (1980). The board's liberal discretion, however, is limited where it has previously acted on the *same* application relating to the *same* parcel. In such a situation, the zoning board of appeals is prohibited from reversing the previous decision unless the facts and circumstances have

materially changed so as to affect the reason for the original decision and no vested rights have intervened. *Laurel Beach Assn.* v. *Zoning Board of Appeals,* 166 Conn. 385, 387, 349 A.2d 834 (1974). Here, we are not dealing with such a case.

In the present case, the board had not previously considered an application for a variance regarding the plaintiffs' property. The plaintiffs, however, seem to believe that the board's grant of a variance to Markovich in 1984 created for them a "wild card," in the words of their attorney, which they could "tap" and "have [the Markovich] variance granted to us." The trial court, in essence, agreed with this position. The crux of the court's memorandum of decision is that the Markovich variance and the plaintiffs' application are virtually identical, and therefore the board arbitrarily denied the plaintiffs their variance. We find that the court incorrectly reached this conclusion.

In addition to finding that the board improperly denied the plaintiffs a variance that was identical to one granted to another person at an earlier time, the court found that the board failed to discuss the question of hardship, access and the two lot access requirement set forth in the regulations. We again disagree with the trial court.

When a zoning board does not state the reasons for its decision on the record, the court must search the record to attempt to find some basis for the action taken. *Grillo* v. *Zoning Board of Appeals,* 206 Conn. 362, 369, 537 A.2d 1030 (1988); *Ward* v. *Zoning Board of Appeals,* 153 Conn. 141, 144, 215 A.2d 104 (1965); *Aitken* v. *Zoning Board of Appeals,* 18 Conn. App. 195, 205, 557 A.2d 1265 (1989). Our review of the record reveals evidence of questioning, discussion and consideration of the very issues the court found that the board ignored. At the public hearing, the plaintiffs'

attorney *himself* put the issue of resident safety and access of emergency vehicles squarely before the board. One board member, Georgette Mills, pointedly asked, "What's the hardship?" The transcript and minutes of the public and special hearing, in addition to the correspondence and exhibits presented to the board, are replete with evidence of information the board had before it relative to this application. There is no evidence that the board ignored the evidence in the record before it.

Furthermore, the record clearly reveals that any hardship the plaintiffs suffered was self-created. The answer to zoning board member Mills' query "What's the hardship?" is clear from an examination of the record: There is none. The plaintiffs purchased a parcel of land from a predecessor in title that had been improperly split, without an Oxford planning or zoning approval in 1979. Because the zoning regulations were clearly in effect at the time of the purchase, the plaintiffs purchased a piece of property that clearly was a nonconformity created by the predecessor in title and clearly did not qualify for residential construction. "Where the applicant or his predecessor creates a nonconformity, the board lacks power to grant a variance." *Johnny Cake, Inc.* v. *Zoning Board of Appeals,* 180 Conn. 296, 300, 429 A.2d 883 (1980); *Garibaldi* v. *Zoning Board of Appeals,* supra, 239.

The board here was correct in denying the plaintiffs' application for variance and, as such, the trial court was incorrect in its conclusion that the board acted improperly.[4]

---

[4] The plaintiffs also ask, in what we regard as an alternative basis to support the trial court's decision, that we decide whether a zoning board member's vote of abstention is to be regarded as an affirmative vote under Connecticut law. The plaintiffs cite no support for this proposition in zoning law. Furthermore, because it is clear that, from our review, Passander, the abstaining member, removed himself from any and all consideration both at the May 8 and May 15 meetings, this issue is wholly without merit.

The judgment is reversed and the case is remanded with direction to render judgment affirming the decision of the zoning board of appeals.

In this opinion the other judges concurred.