[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
STATEMENT OF APPEAL
The plaintiffs, Robert H. and Ferdinand A. Valenti, and Marie and Raymond S. Geremia, appeal the decision of the Zoning Board of Appeals for the Town of Stonington (ZBA) partially granting the application for variances by Anthony J. Torracca and Francis S. Kackowski d/b/a Southern Exposure (Southern Exposure) from §§ 7.10.4, 7.10.5, and 7.16.2 of the Zoning Regulations of the Town of Stonington (Regulations). (Return of Record [ROR], Item A1, Application #93-04)[1]
 BACKGROUND
By warranty deed dated April 29, 1993, Southern Exposure, the successful applicant in the present case, purchased a small parcel of property from Barksdale and Dorothea MacBeth. (ROR, Item 14, Warranty Deed). The property is a triangular shaped parcel, covering 1,495 square feet and located on the northwesterly side of the intersection of Holmes Street and East Main Street (U.S. Route 1), in the Village of Mystic (Mystic), Town of Stonington (Stonington), Connecticut. (ROR, Item A, Original Site Plan; and Item 15, Revised Site Plan). Persons familiar with Mystic will know this location as the intersection containing Mystic's most notable flagpole. The property involved is the small parcel adjacent to the flagpole where the large iron anchor, another of Mystic's distinctive attractions, rested for more than twenty years. On February 4, 1994, Southern Exposure filed an application for variance with the ZBA. (ROR, Item A1). The application sought elimination of the requirements of Regulations § 7.10.4 (off-street parking) and § 7.10.5 (off-street loading berths), and a reduction of the front yard setback requirement of § 7.16.2 from fifty to thirty feet. (ROR, Item A1). Southern Exposure intended to utilize the property to build a small gazebo type structure for light retail sales. (ROR, Item B, Coastal Site Plan).
Following publication of notice in the New London Day and CT Page 4112-O Westerly Sun newspapers on February 25 and March 4, 1994, the first public hearing concerning Southern Exposure's application was held on March 8, 1994. (ROR, Items N and O, Publishers' Certifications; and Item W, Hearing Transcript). Following publication of notice in the same newspapers on April 4 and 8, 1994, a second public hearing was held on April, 12, 1994. (ROR, Items Q and R, Publishers' Certifications; and Item X, Hearing Transcript).
By final decision dated June 14, 1994, the ZBA voted to approve the variances from the requirements of §§ 7.10.4 and 7.10.5, but denied the variance from the requirements of § 7.16.2. (ROR, Item U and V, Record of Decision). The reasons given by the ZBA for its approval of variances from the requirements of §§ 7.10.4 and 7.10.5 were that the "location of the lot is not conducive to making curb cuts for parking [and] traffic moving in and out of the site would be a hazard." (ROR, Item V). The reason given for the denial of a variance from the front yard setback requirements of § 7.16.2 was that "due to location setback not sufficient." (ROR, Item U, Record of Decision).
JURISDICTION
Appeals taken from decisions of a zoning board of appeals are governed by General Statutes § 8-8. "[A] statutory right of appeal from a decision of an administrative agency may be taken advantage of only by strict compliance with the statutory provisions by which it is created." (Internal quotation marks omitted.) Simko v. Zoning Board of Appeals, 206 Conn. 374, 377,538 A.2d 202 (1988). "[Such] provisions are mandatory and jurisdictional in nature, and, if not complied with, the appeal is subject to dismissal." (Alteration in original; internal quotation marks omitted.) Id.
Aggrievement
"[A]ggrievement is a jurisdictional question [and] must be resolved even though the issue was not raised below." WinchesterWoods Associates v. Planning Zoning Commission, 219 Conn. 303,307, 592 A.2d 953 (1991). "[A]n aggrieved person includes any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board." General Statutes § 8-8(a)(1). CT Page 4112-P
The plaintiffs in the present case are the owners of record of a parcel of property on Holmes Street that borders Southern Exposure's property on the northeast side. (Plaintiff's Brief, Exhibit B, Certified Copy of Warranty Deed). Therefore, the plaintiffs are statutorily aggrieved within the meaning of General Statutes § 8-8(a)(1).
Timeliness
The appeal must be commenced by service of process upon the chairman or clerk of the board, the clerk of the municipality and upon each person who petitioned the board during the proceeding and had his or her legal rights, duties or privileges determined therein. General Statutes § 8-8(b), (e) and (f). Service must be made upon all parties within fifteen days from when notice of the decision was first published. General Statutes § 8-8(b).
In the present case, the final decision of the ZBA was published in the New London Day and Westerly Sun on June 17, 1994. (ROR, Item R). The plaintiffs caused Stonington, the ZBA, James Yaczino, the ZBA's chairman, Southern Exposure, the successful applicant, and Francis Kackowski, a petitioner, to each be served with a summons on July 1, 1994. (Sheriff's Return). Therefore, this appeal was commenced in a timely manner. General Statutes § 8-8(b).
SCOPE OF REVIEW
"In reviewing the actions of a zoning board of appeals we note that such a board is endowed with a liberal discretion, and its [actions are] subject to review by the courts only to determine whether [they were] unreasonable, arbitrary or illegal. . . . The burden of proof to demonstrate that a board acted improperly is upon the party seeking to overturn the board's decision." (Internal quotation marks omitted.) Franciniv. Zoning Board of Appeals, 228 Conn. 785, 791, 639 A.2d 519
(1994).
"An administrative appeal shall be confined to the record." (Internal quotation marks omitted.) Blaker v. Planning ZoningCommission, 219 Conn. 139, 146, 592 A.2d 155 (1991). "Where a zoning agency has stated its reasons for its actions, the court should determine only whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the CT Page 4112-Q considerations which the authority was required to apply under the zoning Regulations. . . . Under this traditional and long-standing scope of review, the proper focus of a reviewing court is on the decision of the zoning agency and, with regard to its factual determinations, on the evidence before it that supports, rather than contradicts, its decision." (Internal quotation marks omitted.) Caserta v. Zoning Board of Appeals, 226 Conn. 80, 86-87,626 A.2d 744 (1993). "The trial court may not retry the case or substitute its judgment for that of the agency." (Internal quotation marks omitted.) Smith v. Zoning Board of Appeals,227 Conn. 71, 80, 629 A.2d 1089 (1993), cert. denied, ___ U.S. ___,114 S.Ct. 1190, 127 L.Ed.2d 540 (1994). "Simply, the court must determine whether the conclusions reached by the agency are supported by the record." (Citation omitted.) Beck v. ZBA Town ofNew Canaan, Superior Court, judicial district of Stamford-Norwalk, at Stamford, Docket No. 14 12 31 (July 24, 1995,Karazin, J., ___ CLR ___). "[T]he action of the [board] should be sustained if even one of the stated reasons is sufficient to support it." Burnham v. Planning Zoning Commission, 189 Conn. 261,265, 455 A.2d 339 (1983).
DISCUSSION
The plaintiffs in the present case argue that the ZBA has acted arbitrarily, illegally and abused its discretion. (Application for Appeal, ¶ 4). Among their eleven claims of error, the plaintiffs rely specifically on the fact that the ZBA had entertained and denied a previous application by Southern Exposure requesting the same variances, from the same three sections of the Regulations, for the same project and as to the same piece of property on November 9, 1993. (Application for Appeal, ¶ 4(e)).[2] The plaintiffs assert that the ZBA had no authority to reverse the part of its prior decision denying Southern Exposure's request for variances from §§ 7.10.4 and 7.10.5, because there had been no material change in circumstances. (Plaintiffs' Brief, pp. 4).
Southern Exposure contends, however, that the present application is materially different from the original one and, therefore, that the ZBA did not act arbitrarily or unreasonably in partially reversing its prior decision.[3] Southern Exposure contends that the reduction of the total square footage of the proposed structure, which they argue lessens the number of off-street parking spaces required under the Regulations, and the increased front yard set back, were significant enough changes to CT Page 4112-R warrant the ZBA's reversal of its prior decision. (Defendants' Brief, pp. 5). The court finds the defendant's argument unpersuasive.
A zoning board of appeals is "endowed with a liberal discretion. . . ." Francini v. Zoning Board of Appeals, 228 Conn. 785,791, 639 A.2d 519 (1994). "The board's liberal discretion, however, is limited where it previously acted on the same
application relating to the same parcel." (Emphasis in original.)Haines v. Zoning Board of Appeals, 26 Conn. App. 187, 191-92,599 A.2d 399 (1991). "[T]he power to reconsider is not an arbitrary one, and its exercise should be granted only when there is justification." Burr v. Rago, 120 Conn. 287, 292, 180 A. 444
(1935). Such a justification exists only when "the facts and circumstances which actuated the decision are shown to have so changed as to vitiate or materially affect the reasons which produced and supported it and no vested rights have intervened."Laurel Beach Assoc. v. Zoning Board of Appeals, 166 Conn. 385,387, 349 A.2d 834 (1974) (citing St. Patrick's Church Corp. v.Daniels, 113 Conn. 132, 154 A.2d 343 (1931)). Without such a rule, "there would be no finality to the proceeding; the result would be subject to change at the whim of the members or due to the effect of influence exerted upon them, or other undesirable elements tending to uncertainty and impermanence." St. Patrick'sChurch Corp. v. Daniels, supra, 113 Conn. 137.
In the present case, the proposal submitted with Southern Exposure's first application for variances was for an octagon shaped building covering a total of 850 square feet of floor space. (ROR, Item A). The proposed structure was to be thirty-four feet in diameter at its points, had a two foot set back from the inside edge of the sidewalk at its southerly face and a total front yard set back of twenty-eight feet and eight inches from the center of East Main Street. (ROR, Item A). In order to engage in retail sales out of this structure under literal application of the Regulations, Southern Exposure would have been required to provide a minimum of five off-street parking spaces and one off-street loading berth. (ROR, Item Y, Regulations).[4] The reason given by the board for denying this application was that the "[p]roject is too ambitious vis a vis parking Regulations." (Plaintiffs' Brief, Exhibit A, Application #93-31).
The present application submitted by Southern Exposure requests the same variances as the original application from the same three sections of the Regulations. (Plaintiffs' Brief, CT Page 4112-S Exhibit A; and ROR, Item A1). Under the revised plan submitted with the present application, the total floor area of the structure is reduced to 750 square feet, the set back of the southerly face of the building from the sidewalk is increased to three feet and eight inches, and the total front yard set back is increased to thirty feet and four inches. (ROR, Item, 15). Upon first glance at the revised site plan, it might appear that Southern Exposure has made numerous changes to the proposed structure. (ROR, Items A and 15). The record, however, reflects that the only real difference between the original application and the present one is that the diameter of the proposed structure has been reduced from thirty-four to thirty-two and one-half feet in diameter at its points. (ROR, Item W, Transcript of Hearing on March 8, 1994, Comments of Attorney Bartnik, pp. 20). Therefore, only if this change can reasonably be considered a material change, may the ZBA's reversal of its prior decision stand. Laurel Beach Assoc. v. Zoning Board of Appeals, supra,166 Conn. 387.
The facts of the present case are similar to the facts inLaurel Beach. Id. In Laurel Beach, the plaintiffs were owners of property situated in the Laurel Beach Association, located in Milford, Connecticut. Id., 386. The plaintiffs' property was located in a B-2 zone. Id. Under the Milford zoning regulations, no dwelling accommodating more than two families was permitted in a B-2 zone. Id. The plaintiffs filed an application for a variance to allow them to convert a barn on their property into three apartments. Id. The ZBA of Milford denied the application, stating as its reasons: "No hardship shown. No practical difficulty shown." Id. Six days later the plaintiffs filed a second application, the only change being the added condition that one of the three proposed apartments would be owner occupied. Id. This time, the ZBA granted the variance, stating as its reasons "[p]ractical difficulty, best use of the property and will in no way change the character of the neighborhood" as its reasons. Id., 387. The Beach Association brought an appeal, which was sustained by the Court of Common Pleas. Id. Affirming the decision of the Court of Common Pleas, the Connecticut Supreme Court stated: "[This] case comes squarely within the established law of this state which prohibits a zoning board of appeals from reversing its previous decision unless the facts and circumstances which actuated the decision are shown to have so changed as to vitiate or materially affect the reason which produced and supported it and no vested rights have intervened." Id. CT Page 4112-T
Therefore, based on the Laurel Hill Beach Assoc. case, this court finds that changing the diameter of the proposed building by one and one-half feet can not reasonably be considered a material change that vitiates the ZBA's previous objections to the original project. The ZBA denied Southern Exposure's first application because the "[p]roject [was] too ambitious vis a vis parking regulations." (Plaintiffs' Brief, Exhibit A). The change in overall size of the proposed structure has no effect on the requirements imposed upon the property by Regulations §§ 7.10.4 and 7.10.5. (ROR, Item Y); see also Footnote 4. Even though the structure proposed with the present application covers sixty-seven square feet less total floor area than the structure proposed with the original application, it would still require a minimum of five off-street parking spaces and one off-street loading berth. See Footnote 4. There is no provision in the revised plan to meet these requirements. (ROR, Exhibit 15). Southern Exposure's revised plan fails to meet the off-street parking and loading berth requirements of §§ 7.10.4 and 7.10.5 to the same extent as the plan submitted with the original application. See Footnote 4. It follows that the reasons stated by the ZBA for granting Southern Exposure's February 4, 1994 application for variances from §§ 7.10.4 and 7.10.5 were not sufficient to warrant a reversal of the ZBA's prior denial of Southern Exposure's application for the same variances on this same piece of property on November 9, 1993. Laurel Beach Assoc.v. Zoning Board of Appeals, supra, 166 Conn. 387.
The above finding, however, does not conclude the court's inquiry. Burnham v. Planning Zoning Commission, supra,189 Conn. 265. Where the specific reasons stated by the ZBA are not sufficient to support its decision, the court must search the record for any fact therein that might reasonably be used to uphold that decision. Id.
A careful inquiry reveals nothing in the record to reasonably support a finding that there had been a material change in circumstances that would warrant the ZBA's reversal of its prior decision. (ROR, Items W and X). Again, the original application was denied because the project was "too ambitious vis a vis parking regulations." (Plaintiffs' Brief, Exhibit A). In fact, the discussions at both the March 8 and April 12 hearings focused almost solely on the continuing parking problems in Mystic. (ROR, Items, W and X). Further, Southern Exposure's own witness testified at the March 8, 1994, hearing that "[t]here is CT Page 4112-U virtually no safe parking adjacent to the site." (ROR, Item W, Comments of Bill Bertsche, p. 5).
Therefore, the court finds that the ZBA acted arbitrarily, unreasonably and in abuse of its discretion by reversing its November 9, 1993 decision denying Southern Exposure's application for variances #93-31. See, e.g., Haines v. Zoning Board ofAppeals, supra, 26 Conn. App. 191-92.
CONCLUSION
Based on the foregoing, the plaintiff's appeal is sustained.
Martin, J.