[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 5578-QQ
These are consolidated appeals brought by Patricia Yerkes from decisions of the Town of Voluntown Zoning Board of Appeals denying, on two occasions, her application for a variance seeking relief from the provisions of § 8.4.1 of the town's Zoning regulations. Though somewhat tortuous, a history of the dispute is essential.
The record reveals the following facts, most of which are not disputed. The lot in question, bounded in part by the Patchaug River, pre-existed Zoning in the Town of Voluntown,[1] which became effective in 1973. On February 20, 1991, the plaintiff's predecessors in title received variances enabling them to build a single family house on the lot; the specific regulations from which variances were allowed were §§ 6.4.1 (frontage), 6.3.1 (lot size), 8.10.2 (rear lot driveway), 8.10.1 (lot size) and 8.10.5 (driveway).[2] The regulation at issue in this appeal, § 8.4.1, was enacted on August 17, 1992: this regulation provides that no part of a sewage disposal system shall be located within 75 feet of a river. The plaintiff bought the lot on June 18, 1993. She intended to build a single family house on the lot, but because of the size and configuration of the land, was unable to comply with § 8.4.1. She retained an engineer, who presented plans which contemplated exchanging equal amounts of land to and from a contiguous parcel in which the plaintiff had an ownership interest. With the lot reconfigured, Yerkes could comply with state health code provisions, which required a buffer zone of fifty feet from rivers, and the state sanitarian approved the proposal.
Yerkes appeared before the board a number of times. In May, 1994, there were discussions concerning the proposed house and whether the lot nonconformity was grandfathered; in June, 1994, as previously noted, the application for the variance was denied on the ground of insufficient evidence that the lot pre-existed Zoning.
After the grandfathering issue was resolved in Yerkes' favor, the hearing process began again in November, 1994. The issue was tabled on November 21, 1994: the board expressed concern that if the "swap" of land were effected, the lot may no longer be grandfathered, as it would have been altered.
At a board meeting on December 5, 1994, the application for CT Page 5578-RR the variance was unanimously approved. The town attorney expressed the opinion that alteration of a lot would not necessarily alter the lot's grandfathered status, so long as the nonconformity was not increased. A letter from the state sanitarian, approving the plan as proposed by the plaintiff's engineer, was introduced. The engineer discussed the plan, and maps were introduced. Essentially, a "swap" of land would exchange a parcel abutting the river with an equally sized parcel on higher ground; the septic system for the lot in question, termed "Lot B", apparently would be located on higher ground obtained from the other lot, termed "Lot A". Lot A already had a house on it; Lot A would lose some of the higher ground but would gain riverfront land. The town attorney expressed the opinion that there was no precedent one way or the other, and thought that the board could lawfully approve the variance. Finding a hardship, as Lot B could not otherwise be developed, the board granted the application unanimously.
The vote of the board was apparently not self-executing, however; the enforcement official did not allow the variance to be routinely filed because he discovered, after the December 5, 1994 vote, that Lot A was nonconforming. The Zoning regulations required lot sizes, in the applicable zone, of 140,000 square feet for two-family dwellings and 80,000 square feet for single family dwellings. See § 6.3 of the Regulations. Lot A was approximately 119,000 square feet and had a two family house on it.
The board held another hearing on April 3, 1995: it was evident that some members of the board felt they had been misled, as it had been represented that there were no undisclosed problems with Lot A.[3] On reconsideration, the application was denied by a vote of 4-1; the stated reason for denial was that the "land to be swapped was not of equal value, i.e., dry land for wet lands." One member voted against the application because the whole situation was so unclear that he was not sure what he would be voting for.
The plaintiff again appealed; these consolidated appeals were argued in this court on June 3, 1996. In her first complaint, the plaintiff raised two grounds of claimed error: that the denial of the application resulted in a "taking" of the plaintiff's property, and that the board abused its discretion in failing to find a hardship, in that the lot pre-existed Zoning regulations and therefore was not subject to Zoning regulations." Identical CT Page 5578-SS claims of error were raised in the second appeal.
The jurisdictional issues do not appear to be disputed. The defendant board is authorized to grant variances from Zoning regulations pursuant to § 8-6 of the General Statutes. The appeal was taken pursuant to § 8-8 of the General Statutes. As the owner of the premises whose application was denied, the plaintiff is an "aggrieved person". See § 8-8(1) of the General Statutes; see also Bossert v. Norwalk, 157 Conn. 279, 285
(1968). The Zoning regulations of the town of Voluntown provide for appeals to the board and empower the agency to grant variances based on hardship. See § 13.1 of the Regulations.
This court's scope of review over the action of the agency is narrow. The court is not to substitute its judgment for that of the board and a board's decision is to be disturbed only if it is found to be illegal, arbitrary or an abuse of discretion.Torsiello v. ZBA, 26 Conn. App. 47, 50 (1984); Haines v. ZBA,26 Conn. App. 187, 190 (1991). When the board denies a variance, the issue is whether any of the reasons advanced are valid and supported by the record. Green v. ZBA, 4 Conn. App. 500, 502
(1985). The burden of proof is on the applicant. Carini v. ZBA,164 Conn. 169, 171-72 (1972). If, however, the statutory test for a variance is met and the reasons given by the board for denial are not supported in the record, the court may conclude that denial of the variance was an abuse of the board's discretion.Chevron Oil Co. v. ZBA, 170 Conn. 146, 152-53 (1976).
The plaintiff has advanced two grounds for appeal: that the board abused its discretion in denying the hardship to the claimed nonconforming lot, and that the denial constituted a "taking". As the latter ground has constitutional implications, it usually will be reached only if necessary, after statutory grounds for appeal have been rejected. Adolphson v. ZBA,205 Conn. 703, 720 (1988) (dissent). We turn, then, to the claim that the board abused its discretion in ultimately denying the variance on the ground of hardship.
The board's authority to grant variances arises from § 8-6
(3) of the General Statutes: the board may vary the application of Zoning regulations if a literal enforcement of the regulations would result in exceptional difficulty or unusual hardship so that substantial justice will be done and the public safety and welfare secured; such a hardship must affect the land in issue but not generally the district in which it is located. CT Page 5578-TT Substantially similar language is found in § 13.1 of the Voluntown Regulations. Two conditions are necessary for the granting of a variance: (1) the variance must be shown not to substantially affect the comprehensive Zoning plan; and (2) strict adherence to the literal application of the regulation(s) must be shown to cause unusual hardship unnecessary to carrying out the general purpose of the Zoning law. See Grillo v. ZBA,206 Conn. 362 (19); Dlugos v. ZBA, 40 Conn. App. 784 (1996). The hardship must not be self-inflicted; generally, the hardship must be created by application of the regulations to pre-existing conditions. Chevron Oil v. ZBA, supra, 150.
In the unusual circumstances of this case, as to the history of the parcel, the proposed solution, and the history of the proceedings before the board, it seems clear that the April, 1995, vote finally denying the application was an abuse of discretion, for several reasons. First, the board had previously approved the application, expressly finding a hardship. If a vote is to be reversed, a material change of circumstances must be shown. Root v. ZBA, 41 Conn. Sup. 218 (1989); Haines v. ZBA,26 Conn. App. 187, 191 (1991); Laurel Beach Assn. v. ZBA, 166 Conn. 385,387 (1974). The purported material change is the revelation that Lot A was nonconforming in the sense that a two-family house existed on the lot of 119,000 square feet, where 140,000 square feet were required by regulation; that the "swap" would be of "bad land for good"; and that the nonconformity of Lot A would be increased. The record, however, lacks any support for the propositions that these are legally sufficient reasons or that factually the nonconformity of Lot A would be increased.
As noted in the record by the town attorney, there appears to be no specific precedent for the proposed swap. Although the configuration of both lots would be altered thereby, the size of each lot would remain the same, so there was no increase of the nonconforming feature.[4] Where a use, building or lot is lawfully nonconforming, there is no obligation to rigidly maintain the status quo unless the proposed change would increase the nonconformity. See Petruzzi v. ZBA, 176 Conn. 479 (1979), in which it was held that a landowner was entitled as a matter of right to convert a nonconforming church to a nonconforming home, where the nonconforming features were lot size, setback requirements, and so forth; see also Archembault v. Wadlow,25 Conn. App. 375, 381 (1991) (change in configuration resulting in increase of lot size, though still nonconforming, is not sufficient to deny a variance), and Adolphson v. ZBA, supra, 710 CT Page 5578-UU (change in nonconforming use acceptable where the nonconformity is not increased). As no nonconforming feature other than lot size was suggested in the record, and the proposed change does not increase the nonconformity, there is no substantiation for the purported change of circumstance.
Similarly, as noted above, where it is apparent that a hardship exists, a court will reverse the board's denial where the reason given finds no support in the record. Chevron Oil Co.v. ZBA, supra. As the reason given for denial of the variance is the same as that advanced for the change of circumstance, and that reason finds no support so far as increase of the nonconformity is concerned, the board's action must be reversed. This court has also looked beyond the reasons given by the board and has searched the record for other reasons; see, e.g.,Stankiewicz v. ZBA, 15 Conn. App. 729, 732 (1988); and can find none.
Several other issues should be addressed. First, it seems clear that a hardship exists: the board itself, of course, so found. A hardship must be different from conditions generally affecting lots in that zone, and it must arise from circumstances beyond the control of the property owner. Smith v. ZBA, 174 Conn. 323
(1978). A review of the record supports a finding of hardship in that both grounds are satisfied: the feature of a pre-existing building lot — and, in this case, a lot with variances granted as recently as 1991 — with its topographical and geographical features presents uniqueness sufficient for hardship. SeeArchembault v. Wadlow, supra; Smith v. ZBA, supra. And the hardship was created by the application of the Zoning regulations to the previously existing building lot, so the hardship was not self-created. See Adolphson v. ZBA, supra, 712. The board, when it initially granted the variance, recognized the existence of the hardship and that the comprehensive plan would not be significantly affected.[5] See Dlugos v. ZBA, supra.
It also is significant that the plaintiff's predecessor had procured all variances necessary for building a single family house in 1991, with the proviso that the sanitarian approve provisions for water and sewage. This approval tracks the language of § 12.2 of the Zoning regulations. The only remaining variance requested in 1994 was a variance of the "setback" from the river regulation, § 8.4.1, which was enacted in 1992. As previously noted, § 8.4.1 would be substantially complied with by the terms of the proposal before CT Page 5578-VV the board. It is conceivable that nonconformity as a matter of right may have existed. See § 12.2 of the Voluntown Regulations; Adolphson v. ZBA, supra, 710. This issue need not, however, be reached.
The plaintiff argued that strict application of § 8.4.1 would result in a confiscatory taking of the land, as the lot existed as a building lot prior to the enactment of § 8.4.1. The argument is that if application of the subsequently enacted regulation greatly decreases the value of the property, a variance would not materially impact the effectiveness of the regulations as a whole, and substantial justice would be promoted by granting a variance, then the failure to grant the variance could constitute a confiscatory taking. The considerations before the board would be balancing the degree of the diminution of value with the nature and degree of public harm and the alternatives available to the landowner. See, e.g., Stankiewiczv. ZBA, supra, 733-34; Chevron Oil Co. v. ZBA, supra, 151. There is some authority to the effect that it would be preferable for the plaintiff to have presented evidence of loss of value. SeeStrom v. ZBA, 153 Conn. 339 (19). In any event, the issue need not be reached on this appeal.
Finally, the defendant has argued that the plaintiff did not plead the issue of the need for a change of circumstance to justify a reversal of the board's decision. It is true that the issue was not specifically listed in the complaint; the complaint did allege, however, that the action of the board denying the application for the variance was an abuse of discretion. One of the ways in which the discretion was said to be abused was the board's reversal; this issue was briefed. As reversal without a substantial change of circumstance is a way in which discretion can be abused, and abuse of discretion was pleaded, there is no harm done by not specifically mentioning reversal in the complaint. Additionally, the defendant has argued that the authority relating to nonconforming uses does not apply to nonconforming lots. This court has carefully read the cases cited by the defendant, as well as the Zoning regulations[6] and statutory authority,[7] and, with the proviso that many cases are fact driven, this court finds no controlling and generally applicable distinction between lots and uses, for the purpose of analysis. Many of the cases referred to in this memorandum arise in the context of lots.
In conclusion, this court finds that because there was no CT Page 5578-WW legally sufficient change of circumstance to justify a reversal of the previously granted variance, and no legally sufficient reasons were found in the record for denial of the variance, the action of the defendant board denying the application for the variance is reversed, and the board is to grant the variance.
Beach, J.