## ANTHONY SANTOS *v.* ZONING BOARD OF APPEALS OF THE TOWN OF STRATFORD
### (AC 27243)

Schaller, Bishop and DiPentima, Js.

Submitted on briefs December 1, 2006—officially released April 17, 2007

 

*Ian Angus Cole* filed a brief for the appellant (plaintiff).

*Michael S. Casey* filed a brief for the appellee (defendant).

*Opinion*

DiPENTIMA, J. The plaintiff, Anthony Santos, appeals from the judgment of the trial court dismissing his appeal from the decision of the defendant, the zoning board of appeals of the town of Stratford (board), denying his application for two variances. On appeal, the plaintiff argues that the court improperly concluded that he had failed to demonstrate a hardship sufficient to support the granting of the variances. We disagree and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history, as recited by the trial court, are relevant to the plaintiff's appeal. The plaintiff purchased the subject property at a tax sale in 2002 for $38,000. This property is comprised of several fifty foot wide lots, or portions thereof, as shown on a 1916 subdivision map recorded in the Stratford land records. The plaintiff's flag shaped property, totaling 2.3 acres, consists partially of lot 14, lot 13, lot 12, lot 11 and all of lot 10 as designated on the 1916 map. In 1985, Nancy Fennell, who owned all of these lots, divided the rear portions of lots 12, 13 and 14, thus forming parcel A. Fennell also divided the rear portion of lot 11 and incorporated all of lot 10, thus forming parcel B. The planning and zoning commission never approved the divided lots. Parcels A and B were conveyed, for no consideration, through a quitclaim deed to Richard W. Sorrentino, with restrictions on the buyer's right to sell the property.

The land records reflect that Sorrentino did not pay property taxes on the newly created parcels A and B between 1991 and 2000. The town of Stratford acquired title to the property by foreclosure and sold parcels A and B to the plaintiff at the tax auction. Thereafter, the plaintiff submitted an application to the wetlands commission for permission to build a single-family home on the property. The wetlands commission approved this application. During the wetlands review of the application, however, the planning and zoning administrator informed the plaintiff that he believed that before construction could commence, the plaintiff would need to obtain two variances, one as to lot width and one as to the setback requirements.

On January 6, 2004, the plaintiff applied for the two variances so that he could build his dwelling. Specifically, the plaintiff sought a variance from § 4.2 of the Stratford zoning regulations, which requires a minimum lot width of 100 feet. The plaintiff also sought a variance from § 3.14 of the Stratford zoning regulations, which requires a fifty foot setback from the wetlands. On February 3, 2004, a public hearing was held on the plaintiff's application; the matter was tabled, however, to give the board the opportunity to review questions as to how the property was split from adjoining property.[1] On April 6, 2004, the board considered the town attorney's memorandum on the plaintiff's application and voted to deny the application on the grounds that the property was a rear lot that was illegally created and that there was no hardship.[2] The plaintiff appealed from the

[1] Due to a recording malfunction, there is no transcript of the February 3, 2004 public hearing. The plaintiff has not raised the absence of the February 3, 2004 transcript as an issue before the trial court or on appeal.

[2] The minutes of the April 6, 2004 public hearing reflect the following: "On a motion by Mr. [Anthony] Capuano seconded by Mr. [Maynard] Dougherty it was voted to take the petition to waive minimum lot width of 100 ft. to 50.04 ft. and the 50 ft. setback from wetlands to 15 ft. for grading purposes in order to construct a single family residence on property located in an RS-3/RS-1 District, off the table. Mr. [Gary] Lorenston discussed with the Board the memo from Town Attorney Kevin Kelly. The Board felt that this

board's decision to the trial court, which affirmed the defendant's decision and dismissed the plaintiff's appeal. In its decision, the court stated: "[T]he plaintiff created the hardship. The hardship is self-created because the plaintiff purchased parcels of property that were comprised of lots that had never been approved by a planning and zoning commission. In addition, significant portions of the plaintiff's property (parcel A) are comprised of lots that, when created by predecessors in title, did not conform to the zoning regulations. The remaining portion of the plaintiff's property (parcel B) did not conform to the zoning regulations when created because lot 10 and lot 11 had merged and then were redivided. Finally, the plaintiff has not demonstrated that enforcement of the zoning regulations would cause him an unusual hardship." This certified appeal followed.

As a preliminary matter, we state the standard of review that is applicable to the resolution of the plaintiff's appeal. "Our standard of review when considering an appeal from the judgment of a court regarding the decision of a zoning board to grant or deny a variance is well established. We must determine whether the trial court correctly concluded that the board's act was not arbitrary, illegal or an abuse of discretion. . . . Courts are not to substitute their judgment for that of the board . . . and decisions of local boards will not be disturbed so long as honest judgment has been reasonably and fairly exercised after a full hearing. . . . Upon appeal, the trial court reviews the record before the board to determine whether it has acted fairly or with proper motives or upon valid reasons. . . . We,

was a rear lot that was illegally created and there is no hardship. Therefore, on a motion by Mr. Capuano seconded by Mr. Dougherty it was voted to deny the petition to waive minimum lot width of 100 ft. to 50.04 ft. and the 50 ft. setback from wetlands to 15 ft. for grading purposes in order to construct a single family residence on property located in an RS-3/RS-1 District. This motion carried on a 5-0 vote."

in turn, review the action of the trial court. . . . The burden of proof to demonstrate that the board acted improperly is upon the plaintiffs." (Internal quotation marks omitted.) *Horace* v. *Zoning Board of Appeals*, 85 Conn. App. 162, 165, 855 A.2d 1044 (2004).

"[General Statutes §] 8-6 (a) (3) authorizes a zoning board to grant a variance only when two conditions are met: (1) the variance must be shown not to affect substantially the comprehensive zoning plan; and (2) adherence to the strict letter of the zoning ordinance must be shown to cause unusual hardship unnecessary to the carrying out of the general purpose of the zoning plan. . . . *Kalimian* v. *Zoning Board of Appeals*, 65 Conn. App. 628, 631, 783 A.2d 506, cert. denied, 258 Conn. 936, 785 A.2d 231 (2001)." *Horace* v. *Zoning Board of Appeals*, supra, 85 Conn. App. 166–67. "Proof of exceptional difficulty or unusual hardship is absolutely necessary as a condition precedent to the granting of a zoning variance. . . . A mere economic hardship or a hardship that was self-created, however, is insufficient to justify a variance . . . and neither financial loss nor the potential for financial gain is the proper basis for granting a variance." (Internal quotation marks omitted.) *Dupont* v. *Zoning Board of Appeals*, 80 Conn. App. 327, 330, 834 A.2d 801 (2003). With the foregoing legal principles in mind, we turn to the specifics of the plaintiff's appeal.

The plaintiff argues that the court improperly found that he had failed to demonstrate a hardship sufficient to support the granting of a variance.[3] On the basis of

---

[3] The plaintiff also argues that the court improperly found that lots 10 and 11 had merged and that parcels A and B were improperly created. The defendant counters that the evidence was sufficient to support a finding of merger. Although the court stated that lot 10 and lot 11 had merged and were then redivided, the minutes of the defendant's April 6, 2004 meeting, when the variances were denied, do not mention merger. The minutes simply state: "The Board felt that this was a rear lot that was illegally created and there is no hardship."

"[W]hen a zoning agency has stated its reasons for its actions, a court should not reach beyond those stated purposes to search the record for

our review of the record, however, we conclude that the record supports the court's upholding the board's decision that the plaintiff failed to establish a hardship required for the granting of a variance. We further conclude that even if the plaintiff had established a hardship, the court properly found that the hardship was self-created, and, therefore, the board properly denied the plaintiff's application.

An understanding of applicable regulations, as applied to the plaintiff's property, is necessary for the resolution of the plaintiff's appeal. The plaintiff's first requested variance concerned the property's minimum lot width requirement. The first 100 feet of the plaintiff's property is located in the RS-3 zone. Regulation 4.2 provides that the minimum lot width in an RS-3 zone is 100 feet. At the point where lot width is measured, however, the plaintiff's lot does not conform to this regulation. This is so because regulation 1.32 specifies that minimum lot width is measured "in a straight line at right angles . . . which line of measurement shall touch, but not be in front of the building line." The "building line" is defined in § 1.10 as "[a] line parallel to a street at a distance *equal to the required front yard* or at a greater distance when otherwise established by the Planning Commission or the Zoning Commission of the Town of Stratford or by limitation in a deed filed

other reasons supporting the commission's decision. . . . Rather, the court should determine only whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulations." (Internal quotation marks omitted.) *Clifford* v. *Planning & Zoning Commission*, 280 Conn. 434, 439–40 n.6, 908 A.2d 1049 (2006); *Chevron Oil Co.* v. *Zoning Board of Appeals*, 170 Conn. 146, 152–53, 365 A.2d 387 (1976). We do not believe that a finding of merger was necessary to the board's determination that this was a rear lot that was illegally created. We, therefore, decline to consider the merger issue and decide only whether the court properly upheld the board's decision to deny the plaintiff's application on the grounds that the rear lot was illegally created and that the plaintiff had not satisfied his burden of showing hardship.

in the land records of the Town of Stratford." (Emphasis added.) Pursuant to § 4.2 of the regulations, the required minimum front yard is twenty-five feet in an RS-3 zone.

Applying these regulations to the plaintiff's property, the building line and the measuring line for lot width is twenty-five feet, as this is the minimum front yard requirement under § 4.2.[4] Using this point to measure lot width, it is undisputed that the plaintiff's lot does not conform to the minimum requirement of 100 feet, which is required in an RS-3 zone. The plaintiff argues, however, that the intent of the width regulation, to ensure that the minimum lot width exists at the point where the house is built, is satisfied in this case because, as reflected on the site plan, the proposed house is located on the part of the property where the lot width is in excess of 200 feet.

Turning to the second requested variance, concerning the fifty foot setback from the wetlands, § 3.14 provides: "No new building construction increasing building area including minor additions to existing buildings or detached accessory buildings . . . and no pools, tennis courts, driveways, parking areas, terraces, other impervious surfaces or alteration of existing contours shall be permitted within 50 feet of the mean high water line of any waterbody or watercourse or within 50 feet of any freshwater inland wetland . . . ." According to the plaintiff, the variance was necessary only because the planning and zoning administrator thought that it was required by the grading in preparation for the lawn but

---

[4] The plaintiff contends, however, that the location of the building line under the regulations is not fixed but rather can be set arbitrarily, at any greater distance by the board or the property owner, by limitation in the deed. According to the plaintiff, by inserting a provision in his deed setting the building line at 125 feet from the street, the lot width issue evaporates and no variance is required. Inasmuch as the building line has not been otherwise established by limitation in the deed, we decline to consider this hypothetical scenario.

not the lawn itself. The plaintiff argues that "a sliver of the wetland extends to within fifteen feet of the edge of the lawn area. The proposed house, however, is located outside of the fifty foot setback." The plaintiff contends that the purpose of § 3.14 would not be undermined in any way if the variance was granted because the fifty foot separation was being preserved.

The plaintiff claims that, as applied to the subject property, the regulations have a confiscatory or arbitrary effect and that, without the variances, he is unable to build anything on the property. As to lot width, the plaintiff argues that the hardship arises out of the fact that Stratford does not have any special flag lot or rear lot regulations. The plaintiff argued before the court that the financial hardship is extreme because he invested $38,000 in property that was represented on the assessor's card and taxed for more than nineteen years as a buildable lot. However, "[d]isadvantage in property value or income, or both, to a single owner of property, resulting from application of zoning restrictions, does not, ordinarily, warrant relaxation in his favor on the ground of . . . unnecessary hardship. . . . Financial considerations are relevant only in those exceptional situations where a board could reasonably find that the application of the regulations to the property greatly decreases or practically destroys its value for any of the uses to which it could reasonably be put and where the regulations, as applied, bear so little relationship to the purposes of zoning that, as to particular premises, the regulations have a confiscatory or arbitrary effect." (Internal quotation marks omitted.) *Vine* v. *Zoning Board of Appeals*, 281 Conn. 553, 561, 916 A.2d 5 (2007).

"Proof of financial hardship having a 'confiscatory or arbitrary' effect requires more than testimony that property can be sold only for a price substantially lower than can be obtained if a variance is granted to permit a use otherwise prohibited by the zoning regulations."

*Grillo* v. *Zoning Board of Appeals*, 206 Conn. 362, 371, 537 A.2d 1030 (1988). The record in the present case, however, is silent as to whether there is any alternative use for the property or the extent of the financial impact to the plaintiff as a result of the denial of the requested variances. The fact that the property was taxed as a buildable lot does not necessarily require a finding of unusual hardship. See id., 371–73; *Norwood* v. *Zoning Board of Appeals*, 62 Conn. App. 528, 535–37, 772 A.2d 624 (2001). We further note that the tax deed conveying parcels A and B to the plaintiff specifically stated that the conveyance was "subject to . . . [b]uilding lines, if established, zoning ordinances of the Town of Stratford and any and all provisions of any ordinance, municipal regulation and public or private law, whether local, state or federal." Under these circumstances, the court properly concluded that the board's denial of the plaintiff's application on the basis of a lack of hardship was not arbitrary, illegal or an abuse of discretion.

Even if we assumed, however, that the plaintiff had satisfied his burden of establishing extreme financial hardship, we would conclude that the court correctly concluded that the hardship was self-created. "Where the applicant or his predecessor creates a nonconformity, the board lacks power to grant a variance. Where, however, the hardship is created by the enactment of a zoning ordinance and the owner of the parcel could have sought a variance, a subsequent purchaser has the same right to seek a variance and, if his request is supported in law, to obtain the variance." *Kulak* v. *Zoning Board of Appeals*, 184 Conn. 479, 482, 440 A.2d 183 (1981). In the present case, the board found, and the court agreed, that this was a rear lot that was illegally created. Specifically, at the time that the plaintiff's predecessor in title, Fennell, created parcel B, it did not conform to the lot width requirement under regulation 4.12. In *Haines* v. *Zoning Board of Appeals*, 26 Conn.

App. 187, 193, 599 A.2d 399 (1991), we stated that in this type of situation, the claimed hardship is self-created. "[T]he record clearly reveals that any hardship the plaintiffs suffered was self-created. . . . The plaintiffs purchased a parcel of land from a predecessor in title that had been improperly split, without an Oxford planning or zoning approval in 1979. Because the zoning regulations were clearly in effect at the time of the purchase, the plaintiffs purchased a piece of property that clearly was a nonconformity created by the predecessor in title and clearly did not qualify for residential construction. Where the applicant or his predecessor creates a nonconformity, the board lacks power to grant a variance." (Internal quotation marks omitted.) Id., citing *Johnny Cake, Inc.* v. *Zoning Board of Appeals*, 180 Conn. 296, 300, 429 A.2d 883 (1980); *Garibaldi* v. *Zoning Board of Appeals*, 163 Conn. 235, 239, 303 A.2d 743 (1972).[5] In light of the foregoing, the court correctly found that any claimed hardship to the plaintiff was self-created, and, therefore, the board lacked the power to grant the plaintiff's application.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[5] The plaintiff argues, however, that parcel A and parcel B were not improperly created. Relying on General Statutes § 8-18, the plaintiff argues that the first division of a parcel of land into two parts is not subject to planning review. Pursuant to this statute, in order for a division of land to be a subdivision, it "must occur subsequent to the adoption of subdivision regulations by the planning commission. The division must be made into three or more parts or lots. Accordingly, any divisions of the land prior to the adoption of subdivision regulations [do not] count, and the first division thereafter, namely into two lots, is exempt as a so-called 'free cut.' " R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (2d Ed. 1999) § 10.9, p. 214.

As the board correctly points out, however, it is not the fact that the division of the property into parcel A and parcel B was not approved that makes the parcels illegal; it is the fact that the unapproved parcels did not conform to the applicable zoning regulations that makes them illegal and renders any hardship to the plaintiff self-created. The plaintiff has cited no authority indicating that a landowner is entitled to a first free cut to produce a nonconforming lot.