LEO J. ARCHAMBAULT ET AL. *v.*
JAMES W. WADLOW ET AL.
(9584)

DALY, FOTI and LANDAU, Js.

Argued April 23—decision released August 6, 1991

*Ramona DeSalvo Dittman,* for the appellants (named defendant et al.).

*William C. Kollman II,* for the appellee (plaintiffs).

FOTI, J. The defendant Waterford zoning board of appeals (board)[1] denied the plaintiff landowners' application for a variance from the setback requirements of the Waterford zoning regulations. The trial court sustained the plaintiffs' appeal and, upon certification from this court, the board appealed.

The salient facts are as follows. The plaintiffs, Leo J. and Mary J. Archambault, purchased the subject parcel of land by deed in 1968. At the same time, the plaintiffs also purchased a thirty-two acre parcel contiguous to the subject lot. The subject lot, which was created as a distinct parcel in 1929, had an area of 7500 square feet at the time of purchase. In 1954, the town of Waterford enacted zoning regulations that established the location as an R-20 residential zone. The regulations required that each lot have a minimum area of 20,000 square feet.

The plaintiffs subsequently subdivided and developed the contiguous thirty-two acres. In doing so, the plain-

---

[1] Originally named as defendants in this case were James W. Wadlow, chairman of the Waterford zoning board of appeals; Calvin K. Brouwer, Waterford town clerk; and the Waterford zoning board of appeals. Calvin K. Brouwer has not appealed. For purposes of this opinion, we will refer to the defendants as "the board."

tiffs used a lot adjacent to the subject lot to build a road, known as Country Club Drive. The construction of this road left an excess area of 750 square feet. This footage was added to the subject lot, increasing its area to approximately 8250 square feet. The construction of Country Club Drive also made the subject lot a corner lot. Under the Waterford zoning regulations, corner lots are subject to stricter setback requirements. The plaintiffs applied to the board claiming first that the subject lot was entitled to a building permit as a preexisting nonconforming lot. In the alternative, the plaintiffs sought a variance to enable them to build a single-family home with a six foot setback rather than a fifty foot setback as required by the Waterford zoning regulations.

The trial court sustained the plaintiffs' appeal from the denial of the variance. The trial court found that the record did not reasonably support the board's decision because the board had misapplied the law regarding hardship and nonconformance. The court further held that the denial of the variance constituted a confiscation of the plaintiffs' property because the only permitted use for the property was the construction of a single-family home.

The court found that the plaintiffs' hardship was not self-created. Rather, the genesis of the plaintiffs' hardship was the imposition of the 1954 zoning regulations. The court also found the subject lot to be a preexisting nonconforming lot because the parcel predates the zoning regulations. The construction of Country Club Drive, which caused the parcel to become a corner lot, did not transform the lot from a preexisting nonconforming lot. Nor was its character changed by the addition of 750 square feet to the lot. Finally, the court reasoned that safety and aesthetic concerns do not justify a restriction on the use of land which amounts

to a confiscation. For these reasons, the trial court held that the board's denial was illegal, arbitrary and an abuse of discretion.

On appeal, the board claims that the trial court improperly determined (1) that the landowners' hardship was not self-created, (2) that the lot was protected as a pre-existing nonconforming lot, and (3) that the board's decision to deny the variance was not reasonably supported by the record. We affirm the judgment of the trial court.

I

We first address the board's claim regarding hardship. Waterford zoning regulation § 24-3-2 provides that if a landowner owns contiguous lots, one of which is nonconforming, the land is considered an undivided parcel for the purposes of the regulation. The board maintains that this regulation required the plaintiffs to merge the undersized lot with their contiguous property in order to bring the lot to conformity. The board argues that the plaintiffs' failure to combine the properties when planning the subdivision resulted in the present hardship.

We do not reach the merits of this claim, however, because the board failed to raise the issue of merger at either its hearing or the hearing before the trial court. Under Practice Book § 285A,[2] "[t]his court is not bound to consider claims of law not raised at trial." *Northeast Electrical Contractors* v. *Udolf,* 1 Conn. App. 169, 171, 469 A.2d 419 (1984); see also *Bigionti* v. *Argraves,* 152 Conn. 700, 701, 204 A.2d 408 (1964). The function of an appellate court is to review a case on

---

[2] Practice Book § 285A provides in relevant part: "If a party intends to raise any claim of law which may be the subject of an appeal, he must either state the same distinctly to the court before his argument is closed or state it in a written trial brief. If this is not done, it will not be the duty of either the trial court or the appellate court to decide the claim."

the theory on which it was tried and decided in the trial court. *Lashgari* v. *Lashgari,* 197 Conn. 189, 196, 496 A.2d 491 (1985). Therefore, the board cannot raise the question of merger for the first time on appeal. Although we have the power to notice plain error under Practice Book § 4185, we generally exercise our discretion only when a constitutional right or an important general interest is at issue. *Texaco, Inc.* v. *Golart,* 206 Conn. 454, 460, 538 A.2d 1017 (1988). The plain error doctrine is to be narrowly applied. *Aksomitas* v. *Aksomitas,* 205 Conn. 93, 97, 529 A.2d 1314 (1987). The nature of the board's claim of merger does not warrant the exercise of our discretion under the plain error doctrine. Thus, we decline to entertain the claim.

## II

The board's second claim is that the trial court mistakenly found that the parcel was entitled to protection as a preexisting nonconforming lot. The board's argument in this regard is two-pronged. First, the board claims that under Waterford zoning regulation § 24-3-2 providing for merger, the subject parcel merged with the contiguous property held by the plaintiffs and thus lost its character as a legal nonconforming lot. Again, because the board did not raise the issue of merger at any time during the proceedings in the trial court, we will not consider it.

Second, the board asserts that General Statutes § 8-2 protects only uses, buildings and structures and does not apply to vacant lots. Section 8-2 provides that local regulations "shall not prohibit the continuance of any nonconforming use, building or structure existing at the time of the adoption of such regulations." It is true that to qualify as a legal nonconforming use under § 8-2, the use must be actual and not simply contemplated. *Lebanon* v. *Woods,* 153 Conn. 182, 197, 215 A.2d 112 (1965). The board fails to recognize, however, that Water-

ford zoning regulation § 24.3 protects preexisting nonconforming lots, as well as uses. Section 24.3 defines a nonconforming lot as "a lot which had a separate existence prior to the enactment of th[e] zoning regulations . . . ." The subject lot was created as a distinct, separate parcel in 1929, long before the enactment of the zoning regulations. Therefore, it is entitled to protection as a legal preexisting nonconforming lot under the local ordinance, and the board's second claim is without merit.

### III

The board's final claim is that the trial court was mistaken in finding that the record did not reasonably support its action.

The board's stated reasons for refusing to grant a variance were (1) that the plaintiffs' hardship was self-created, (2) that the subject parcel was not the same preexisting nonconforming lot, (3) that the setback requirements increased when the parcel became a corner lot, (4) that the proposed structure's proximity to the road would pose a safety hazard, and (5) that the proposed structure would adversely impact the character of the neighborhood.

In reviewing a zoning board's decision, the trial court must determine "whether the reasons assigned are reasonably supported by the record and whether they are pertinent to the considerations which the commission is required to apply under the zoning regulations." *Zieky* v. *Town Plan & Zoning Commission,* 151 Conn. 265, 267–68, 196 A.2d 758 (1963). The trial court may reverse the board's decision if the court finds that the board's action was illegal, arbitrary or an abuse of discretion. *Cameo Park Homes, Inc.* v. *Planning & Zoning Commission,* 150 Conn. 672, 677, 192 A.2d 886 (1963).

The trial court found that the record did not support the board's decision to deny the variance for two reasons. First, the court found that the board misapplied the law in determining that the plaintiffs' hardship was self-created and that the parcel was no longer a pre-existing nonconforming lot. Second, the court held that the board's refusal to grant a variance constituted a practical confiscation of the plaintiffs' land.

We first address the board's first three reasons for denying the plaintiffs' application. Regarding hardship, under General Statutes § 8-6 (3), a local zoning board may grant a variance where two basic conditions are met: "(1) the variance is shown not to affect substantially the comprehesive zoning plan, and (2) adherence to the strict letter of the zoning regulation is shown to cause unusual hardship unnecessary to the carrying out of the general purpose of the zoning plan." *Adolphson* v. *Zoning Board of Appeals,* 205 Conn. 703, 709, 535 A.2d 799 (1988); *Smith* v. *Zoning Board of Appeals,* 174 Conn. 323, 326, 387 A.2d 542 (1978). If, however, the hardship arises from a voluntary act on the part of the applicant, the board does not have the authority to grant a variance. *Pollard* v. *Zoning Board of Appeals,* 186 Conn. 32, 39, 438 A.2d 1186 (1982); *Belknap* v. *Zoning Board of Appeals,* 155 Conn. 380, 384, 232 A.2d 922 (1967). The board is under no duty to extricate an applicant from a self-created hardship. *Pollard* v. *Zoning Board of Appeals,* supra, 44. "The hardship which justifies a board of zoning appeals in granting a variance must be one that originates in the zoning ordinance . . . and arises directly out of the application of the ordinance to circumstances or conditions beyond the control of the party involved." (Citations omitted.) Id., 39–40.

The subject lot has existed as a distinct lot since its creation in 1929. It has been nonconforming in size since the enactment of the zoning regulations in 1954.

"Where a nonconformity exists, it is a vested right which adheres to the land itself." *Petruzzi* v. *Zoning Board of Appeals*, 176 Conn. 479, 483, 408 A.2d 243 (1979). The right to seek a variance is not extinguished by the arrival of a new owner. See *Johnny Cake, Inc.* v. *Zoning Board of Appeals*, 180 Conn. 296, 300–301, 429 A.2d 883 (1980). Here, the plaintiffs did not create the nonconformity, but, rather, the nonconformity arose with the enactment of the zoning regulations. Thus, the plaintiffs did not create their own hardship.

As previously discussed, the subject lot is a preexisting nonconforming lot under the Waterford zoning regulations. The parcel's increase in size did not change its status as a preexisting nonconforming lot. If anything, this additional footage brought the lot closer to conformity with the regulations. The construction of Country Club Drive, which made it a corner lot, did not transform it from a legal nonconformance either. Thus, the board's first, second, and third reasons are unsupported. We now turn to reasons four and five.

Zoning regulations that reasonably promote public health, safety and welfare are constitutional, even when they impinge on the rights of property owners. *Poneleit* v. *Dudas*, 141 Conn. 413, 417–18, 106 A.2d 479 (1954). Nevertheless, "an ordinance which permanently restricts the use of property for any reasonable purpose goes beyond permissible regulation and amounts to a taking." *Brecciaroli* v. *Commissioner of Environmental Protection*, 168 Conn. 349, 355, 362 A.2d 948 (1975). A practical confiscation occurs when an ordinance so limits the use of land that it cannot be utilized for any permitted purpose without a variance. *Chevron Oil Co.* v. *Zoning Board of Appeals*, 170 Conn. 146, 152, 365 A.2d 387 (1976). In determining whether a zoning regulation is unreasonable and confiscatory as to a piece of property, the court must consider the facts and cir-

cumstances of each individual case. *Troiano* v. *Zoning Commission,* 155 Conn. 265, 269, 231 A.2d 536 (1967). Namely, the court should examine the diminution in the value of the land, the nature and degree of public harm to be prevented, and the alternatives available to the landowner. *Brecciaroli* v. *Commissioner of Environmental Protection,* supra, 356.

Here, the board asserts that the proposed structure would create a safety hazard and would adversely impact the character of the neighborhood.[3] These concerns, however, are outweighed by the fact that the board's denial of a variance constitutes a practical confiscation. The R-20 residential zone at issue permits the construction of single-family homes only. As the trial court pointed out, the record does not indicate any reasonable use for the land other than for the construction of a single-family home. Thus, without a variance from the setback requirements enabling the plaintiffs to build the dwelling, the value of the plaintiffs' land is significantly diminished. Because there are no alternative uses for the plaintiffs' property, the board's action amounts to a practical confiscation. See *Chevron Oil Co.* v. *Zoning Board of Appeals,* supra. For these reasons, the trial court properly held that the board's decision was illegal, arbitrary and an abuse of discretion.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[3] Although the board based its decision in part upon safety and aesthetic concerns, there is a paucity of evidence in the record regarding these issues.