[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The instant proceeding is an administrative appeal from the denial of a variance which was sought to overcome a cease and desist order issued by the zoning enforcement officer (hereafter "ZEO"). The appellant has exercised his appellate rights in a timely fashion by instituting this administrative appeal and by causing a proper summons and citation to be served on the respondent. CT Page 7840
Kleemann owns property on Candlewood Lake at Candlewood Knolls known as 16 Lakeshore North in New Fairfield, Connecticut, which he uses as a summer residence one month per year. The parcel is located in a R-44 residential zone, which has a minimum acreage requirement of one acre. However, his lot lawfully existed prior to the enactment of the zoning regulations, and, accordingly, is a legal nonconforming use consisting of only one-eighth of an acre. In addition, the R-44 zone requires, for any structure on a lot, front setbacks of forty feet, side setbacks of twenty feet, and rear setbacks of fifty feet. Kleemann's lot is so small that any structure on the property would violate the setback requirements.
On August 30, 1992, he applied for a variance from the zoning regulations so that he could enclose his rear porch in order to create more storage space for his home. The application was denied for lack of hardship. On June 10, 1993, he again applied for a variance, which application was also denied. After the second denial, Donald Kamps, Chairman of the ZBA, suggested that Kleemann erect a storage shed on the property instead of enclosing the rear porch. He did so, and was subsequently served with a cease and desist order by the ZEO on October 19, 1994.
Kleemann was served with a second cease and desist order on February 2, 1995, and a third on July 21, 1995. He appealed the July 21, 1995 order and simultaneously applied for a variance on August 11, 1995. A duly noticed public hearing was held on September 21, 1995.[1]
At the hearing, Kleemann testified that he needed additional storage space for his lawn mower, garden furniture and other gardening materials. He stated that although storage had not initially been a problem when he purchased the house, the size of his family has increased from one to four children, necessitating additional storage space. He continued by saying that he had originally wanted to enclose the rear porch, but was denied a variance to do so, and that he "reluctantly" put up the storage shed at the suggestion of the Chairman of the Zoning Commission. The Chairman responded that he meant to only suggest that Kleemann erect a shed with all the necessary approvals from the ZBA.[2] Kleemann also pointed out that he only put up the shed after being denied a variance for two consecutive years on the ground that he had not demonstrated hardship; the lack of hardship, he was told, was that he "could always put up a shed." Finally, Kleemann stated that he only wanted to do what most of his neighbors had been given permission to do: enclose his rear porch to create additional storage space.
Elie Coury, Kleemann's attorney, also spoke at the public hearing CT Page 7841 on his behalf. Relying on a case from the Connecticut Appellate Court,Archambault v. Wadlow, 25 Conn. App. 375, Coury emphasized that since Kleemann's property is a nonconforming use, a variance could not be denied on the ground that Kleemann has created his own hardship. Kleemann's neighbor, Robert Williams, spoke at the meeting in opposition to the variance, noting that the shed as it is currently situated is only .6 inches from his property line. Williams also stated: "And in closing, I'd just like to say, Mr. Kleemann is only in this house for one month out of a year. And, I have yet to see him push a lawn mower. . . . He hires all his lawn cutting. . . . Well, that's the strength of his case. He needs a place to put his lawn mower."
In addition, Edward Sapanski, another one of Kleemann's neighbors, spoke in opposition to the variance, stating that he believed the shed would depreciate his property value: "That is unacceptable to people on the other side of the street. It's certainly not going to be acceptable to me." Finally, Walter Coate, also a neighbor of Kleemann, stated that he was opposed to the variance because he "ha[s] to look at that eyesore for twelve months," even though Kleemann is only on the property one month per year.
After the public portion of the hearing concluded, the ZBA members spoke about their position on the variance application. Board member Day made the following comments: "[I]t seems to me that the appellant really comes here with unclean hands in the sense that having gone through the process, he felt wrongfully decided earlier. He, more than most New Fairfield residents should have been aware that-without regard to any expression of sentiment or suggestion he might have heard from any source, that there were certain procedures that had to be followed before a shed was erected. . . . I don't think that's relevant per se to the issue of whether a variance should be granted, but I think in considering the cease and desist order, I think — how knowing the violation is if you will . . . is properly considered."
ZBA Chairman Donald Kamps stated that in most of the cases we are looking for a hardship and, obviously, Kleemann's hardship must be demonstrated. And, I think we are looking at a self-created hardship. I mean, with a husband and wife and four children in a small nonconforming house that have outgrown the house, I mean that is — that's a personal problem. That is not a hardship.
At the close of the September 21, 1995 hearing, the ZBA voted four to zero to uphold the cease and desist order and four to zero to deny Kleemann's variance application. Notice of the ZBA's decision was sent to Kleemann by letter dated September 28, 1995. In his complaint, CT Page 7842 Kleemann alleges that the ZBA acted illegally, arbitrarily, and abused its discretion by "refus[ing] to grant the variance even though a valid hardship exists" and by failing to state the reasons for its decision.
At the outset, it should be noted that Kleemann is an aggrieved person within the meaning of General Statutes § 8-8 (a)(1) because he owns the land which was the subject of the ZBA's action in denying the variance. Bossert Corporation v. Norwalk, 157 Conn. 279, 285. Additionally, this appeal was timely commenced since Kleemann filed the action within fifteen days of the notice of the ZBA's decision of its denial of his application for a variance. Section 8-8(b) of the General Statutes.
The standard of review of a decision of an administrative body is well settled. "In reviewing an appeal from an administrative agency, the trial court must determine whether the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion." (Citations omitted; internal quotation marks omitted.) Smith v. Zoning Board ofAppeals, 227 Conn. 71, 80, 629 A.2d 1089 (1993), cert. denied, ___ U.S. ___, 114 S.Ct. 1190,127 L.Ed.2d 540 (1994). "Conclusions reached by the commission must be upheld by the trial court if they are reasonably supported by the record. . . . The question is not whether the trial court would have reached the same conclusion, but whether the record before the agency supports the decision reached." DeBeradinis v. ZoningCommission, 228 Conn. 187, 198.
"A variance is an authorization obtained from the zoning board of appeals to use property in a manner otherwise forbidden by the zoning regulations." Kelly v. Zoning Board of Appeals, 21 Conn. App. 594,597. "An applicant for a variance must show that, because of some peculiar characteristic of his property, the strict application of the zoning regulation produces an unusual hardship, as opposed to the general impact which the regulation has on other properties in the zone." (Internal quotation marks omitted.) Bloom v. Zoning Board of Appeals,233 Conn. 198, 207, quoting Dolan v. Zoning Board of Appeals,156 Conn. 426, 430. "Proof of hardship is a condition precedent to granting a variance." Kelly v. Zoning Board of Appeals, supra, 21 Conn. App. 598, citing Point O' Woods Assn., Inc. v. Zoning Board ofAppeals, 178 Conn. 364, 365.
Kleemann has two principal arguments in his brief. The first is that since his lot is nonconforming, his application for a variance cannot be denied based on the ZBA's assertion that his hardship is "self-created." For this proposition, Kleemann relies on the Appellate Court's decision inArchambault v. Wadlow, 25 Conn. App. 375. Secondly, Kleemann argues that the ZBA's decision to deny the variance was arbitrary, illegal CT Page 7843 and an abuse of its discretion because his application was the only one of seven considered at the September 21, 1995 public hearing to be denied on the merits. He points out that other applicants were granted variances to do precisely what he wanted to do — increase the size of his house to provide storage space — yet his application was denied while the others were granted. Kleemann argues that the transcript of the public hearing supports his claim that the ZBA acted illegally and arbitrarily.
In response, the ZBA argues that Kleemann's hardship, if any, was self-created, because when he erected a storage shed on the property, he voluntarily took a chance that he would be permitted to put his property to a use which was in violation of the regulations. The ZBA continues by asserting that it is not bound by its decision to grant variances to other landowners when considering Kleemann's application since each application must be evaluated on its own merits. Finally, the ZBA argues that the public welfare would not be served by granting Kleemann's application for a variance.
Since the ZBA did not state the reasons for its decision in denying Kleemann's application for a variance, this court must "search the record to attempt to find some basis for the [denial]." Haines v. Zoning Boardof Appeals, 26 Conn. App. 187, 192. There are two reasons apparently, which can be culled from the record upon which the ZBA based its decision to deny Kleemann's requested relief. The first is that the ZBA believed Kleemann's hardship was "self-created"; and the second is that it did not care for the fact that Kleemann had put up the shed without first seeking its approval. The court will address the validity of both of these reasons below.
The ZBA argues that any hardship Kleemann is experiencing due to lack of storage space is self-created. "The self-created hardship rule provides that where the applicant creates a nonconformity, the board lacks power to grant a variance." (Internal quotation marks omitted; alterations omitted.) Osborne v. Zoning Board of Appeals, 41 Conn. App. 351,354, quoting Kulak v. Zoning Board of Appeals, 184 Conn. 479,482. In this case, however, neither Kleemann nor his predecessors created the nonconformity in his parcel. Kleemann's lot was one-eighth of an acre when the zoning regulations were established; accordingly, it cannot be said that the hardship — that is, the small size of the lot — was self-created. Archambault v. Wadlow, supra, 382.
In Archambault v. Wadlow, supra, the appellants had owned a small nonconforming lot which existed prior to the zoning regulations. They also owned adjoining property which they converted partially into a road, leaving an additional small portion of land bordering the subject lot. CT Page 7844 When they sought to develop the subject parcel with a single family home, they were denied a variance from the setback requirements to do so. The Zoning Board of Appeals reasoned that the appellant's hardship had been self-created and that they were therefore not entitled to a variance. The trial court reversed the Board's determination on that issue and the Appellate Court affirmed that finding.
The Appellate Court stated: "The subject lot has existed as a distinct lot since its creation in 1929. It has been nonconforming in size since the enactment of the zoning regulations in 1954. Where a nonconformity exists, it is a vested right which adheres to the land itself. . . . The right to seek a variance is not extinguished by the arrival of a new owner. . . . Here, the plaintiffs did not create the nonconformity, but, rather, the nonconformity arose with the enactment of the zoning regulations. Thus, the plaintiffs did not create their own hardship." (Citation omitted; internal quotation marks omitted.) Archambault v. Wadlow, supra, 381-82.
The ZBA argues that Archambault does not apply because Kleemann's lot was already developed to the full extent of the nonconforming use with a single-family home when he purchased it, whereas in Archambault the property had not been developed when it was rendered nonconforming and the plaintiff was only seeking to do what he was legally entitled to; i.e., develop the property with a single family residence. The ZBA also argues that the shed is not a legally nonconforming use of Kleemann's property since it is an extension of a nonconforming use. This argument is unpersuasive, however, because Kleemann's need to erect the shed only arose after his application for a variance was twice denied. In other words, the ZBA told Kleemann that he had not demonstrated a hardship sufficient to entitle him to a variance because he could erect a shed, and when he attempted to get a variance for the shed, his application was denied because the shed is not a legally protected nonconforming use.
The foregoing discussion illustrates the problem in this case, and that which is most disturbing to the court: the circular reasoning used by the ZBA in denying the variance. Although the ZBA's denial of Kleemann's first two applications for a variance to enclose his rear porch do not appear in the return of record, Kleemann asserts — and his assertions are unchallenged — that his applications were denied by the ZBA because he could not show a hardship. Kleemann testified that he was told by the ZBA that he could not demonstrate hardship because he could always put up a shed.[3] In fact, it was the Chairman of the ZBA who suggested that Kleemann erect such a shed. When he did what the Chairman suggested, however, he was served with a cease and desist order, and when CT Page 7845 he applied for a variance to keep the shed, the ZBA denied his application, reasoning that he had knowingly erected a shed in violation of the zoning regulations. The ZBA upheld the cease and desist order because it felt that Kleemann "more than any other New Fairfield resident," should have known that a variance was needed to erect the shed, notwithstanding its own Chairman's suggestion that Kleemann erect such a shed.[4]
Unfortunately for the ZBA, it cannot enjoy the best of both worlds. It cannot deny a variance on the ground that no hardship exists because there is a particular remedy which it has suggested, and then disallow the suggested remedy when an application is submitted to carry out that remedy.
Moreover, the ZBA, in denying the variance for the shed, considered unfavorably the fact that Kleemann had erected it without its permission. Although Board member Day suggested that such a "knowing violation" could not be legally considered in granting or denying the variance, it is apparent from the record that this is just what the Appellate Board did. This is confirmed in the ZBA's brief where it stated: "When [the] plaintiff erected a storage shed on the property, he voluntarily took a chance that he would be permitted to put his property to a use which was in violation of the regulations, and which rendered the property even more nonconforming. He has created his own hardship. The ZBA had no authority to grant [the] plaintiff a variance given that [the] plaintiff's hardship was created by his own voluntary act."[5] This argument misconstrues the self-created hardship rule; Kleemann's hardship demonstrating a need for a variance for his shed did not arise from the fact that he erected the shed without permission — it arose from the fact that the ZBA would not allow him to enclose his porch because he had the merely theoretical option of erecting such a shed.
Finally, while some of Kleemann's neighbors argued in opposition to the variance at the public hearing, opining that the shed would depreciate their property value, the record indicates that ZBA rejected their testimony. After the public portion of the September 21, 1995 hearing was closed, board member Day stated: "The second ground in effect that [Kleemann] offers is that the prior appeal for a variance with respect to the porch was wrongly denied. It seems to me that issue isn't before us and can't be considered by us. . . . That makes consideration of the impact on the community irrelevant." (Emphasis added.)[6] The record also indicates that Kleemann's neighbors were more concerned with the fact that he hired someone else to cut his lawn and that he was only a summer resident than the fact that their property value might decline. All of these circumstances cause the court to conclude that the ZBA acted arbitrarily and in an abuse of its discretion in denying Kleemann's application for a variance. The appeal is, accordingly, sustained. CT Page 7846
Kleemann has argued that the ZBA's decision was arbitrary and capricious in light of the fact that out of seven applications for variances considered at the September 21, 1995 public hearing, his was the only one denied on the merits. A review of the record indicates that this is indeed true; however, the fact that a zoning board has granted other variance applications does not, in itself, legally require the board to grant similar applications. Haines v. Zoning Board of Appeals, supra, 26 Conn. App. 191. Accordingly, as suspect as the ZBA's denial of Kleemann's variance might be in light of the ZBA's consideration of other, similar applications, this court cannot sustain Kleemann's appeal on that premise.
Judgment may enter in accordance with the foregoing, sustaining the appeal.
Moraghan, J.