[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: ADMINISTRATIVE APPEAL
The plaintiffs, Pasquale Guliano and Joan Guliano (hereinafter "the plaintiffs") appeal from the decision of the Zoning Board of Appeals of the City of Derby granting a variance to the applicants, Joyce and Jeffrey Stedner. The plaintiffs name Joyce Stedner, Jeffrey Stedner, Joseph Crocamo, the Zoning Board of Appeals of the City of Derby and Joan Willamson and Barbara Moore, Clerks for the City of Derby, as defendants.[1]
On April 24, 1997, the Zoning Board of Appeals of the City of Derby's (hereinafter "ZBA") granted a variance to an application filed by Joyce and Jeffrey Stedner ("Stedners"), through their agent Joseph Crocamo. The notice of the decision was published in the local newspaper. (Plaintiff's Appeal, dated May 8, 1997; Answer, dated July 25, 1997.) On May 9, 1997, the plaintiffs served the defendants with summons, citation and appeal.
(Sheriff's Return.)
The plaintiffs filed a brief on September 26, 1997 to which the defendants Stedners and Crocamo responded on October 24, 1997. The ZBA filed its brief on December 8, .1997. The plaintiffs filed a reply brief on February 23, 1998. The Stedners and Crocamo filed a response to the reply brief on September 2, 1998. The plaintiffs then filed a supplemental reply brief on September 12, 1998. A hearing was held before the court, Mancini, J., on September 3, 1998. CT Page 2248
In October, 1964, Angelo E. Dirienzo established a three-lot subdivision which was approved by the Derby Board of Alderman and recorded in the Derby Land Records. (Return of Record [ROR], #11.) Lot #1, containing some 15,993 square feet was sold on December 31, 1964 to Mrs. Genevieve Crocamo. (ROR #41, p. 7.) Mrs. Crocamo is the wife of the defendant Joseph Crocamo and the mother of the defendant Joyce Stedner. (ROR #41, p. 8.) Lot #2, the subject of the Stedners' application to the ZBA, comprised of some 15,120 square feet, was sold to Mariano and Lisa Testone on December 23, 1965. (ROR #41, p. 8.) Lot #3, containing some 15, 250 square feet was sold to the plaintiffs in 1967. (ROR, #34, P. 11.)
In 1966, Genevieve Crocamo constructed a home on Lot #1. (ROR, #41, p. 8.) However, it was not until the early 1970's that it was discovered that the home constructed on Lot #1 actually encroached six feet over the property line onto Lot #2. (ROR, #41, p. 10-11.) Due to this encroachment, the Testone family conveyed Lot #2 to Daniel Skuret, a trustee for Mrs. Crocamo. (ROR, #14; #41, p. 11.)
In 1969, the City of Derby Zoning Regulations were created. Under the regulations, an "R-20" residential zone was established with requirements that the lot area contain at least twenty thousand square feet, the lot width contain 125 feet and the side yard distance be at least twenty feet and a total of forty-five feet. (City of Derby Zoning Regulations, Schedule 1.) Each of the three lots described above is presently located in an "R-20" residential district.
On October 15, 1990, the Stedners acquired title to Lot #2 via a warranty deed from Daniel Skuret. (ROR #13.) In April, 1996, Joseph Crocamo, as agent for his wife and daughter and her husband, submitted two applications, applications #1073 and #1074, for both Lots #1 and #2, seeking to relocate the dividing line between these two lots and a lot area and side yard variance as to Lot #2. (ROR, #34.) These applications were subsequently withdrawn without prejudice on May 23, 1996. (ROR, #35, p. 2)[2]
In July, 1996, Crocamo attempted to obtain a building permit for lot #2 without the need of a variance. (ROR, #41, p. 17.) When this attempt failed, the Stedners filed another application for a variance. This application sought a variance as to minimum lot area from the original nonconformance of 15, 120 square feet to 13,714 square feet. It also sought a variance as to lot width CT Page 2249 from the original nonconforming width of 114 feet to 87 feet. (ROR, #1; #2.)
In effect, the application for variance sought to move the property line between lot #1 and lot #2 so that the home on lot #1 would no longer encroach on lot #2 while, at the same time, seeking a variance for a residential home to be built on the now smaller lot #2. As basis for the application, the Stedners and Crocamo claimed a double hardship. First, the Stedners claimed that the 1966 error which caused the house on lot #1 to encroach on lot #2 was beyond the control of any of the defendants and caused by an independent contractor. (ROR, #41, p. 10.) Secondly, the Stedners claimed that discovery of the error in 1974 created a hardship in that, had the error been discovered earlier, a savings clause of the Derby Codes, § 25-6(c)(4), would have allowed the construction of a home on lot #2 without the requirement of a variance. (ROR, #41, p. 17.)
The ZBA heard this matter over a course of two meetings on February 6, 1997 and March 27, 1997. (ROR, #33, #20, #41, #42.) The ZBA, by unanimous vote, granted the variance on April 24, 1997. (ROR, #21, #43.)
At the appeal, the court, Mancini, J., found that the plaintiffs are abutting landowners to lot #2 and are, therefore, aggrieved persons pursuant to General Statutes § 8-8 (a)(1). (Transcript, September 3, 1998, p. 4.)
As the ZBA's decision was published on April 24, 1997, and the defendants were all served on May 9, 1997, the present appeal is timely and within the fifteen days provided for by § 8-8
(2)(b). In addition the proper parties were served in accordance with § 8-8(e).
"The standard of review on appeal from a zoning board's decision to grant or deny a variance is well established." Bloomv. Zoning Board of Appeals, 233 Conn. 198, 205, 658 A.2d 559
(1995). The trial court must determine whether the board's action was "arbitrary, illegal or an abuse of discretion." Id., 205-06.
"Courts are not to substitute their judgment for that of the board . . . and decisions of local boards will not be disturbed so long as honest judgment has been reasonably and fairly exercised after a full hearing. . . . Upon appeal, the trial court reviews the record before the board to determine whether it CT Page 2250 has acted fairly or with proper motives or upon valid reasons. . . . The burden of proof to demonstrate that the board acted improperly is upon the plaintiffs." (Citations omitted; internal quotation marks omitted.) Id.
The question is not whether the trial court would have reached the same conclusion, but whether the record before the agency supports the decision reached. DeBerardinis v. ZoningCommission, 228 Conn. 187, 198 (1994). "In applying the law to the facts of a particular case, the board is endowed with a liberal discretion. . . ." (Citations omitted.) Irwin v. Planning Zoning Commission of the Town of Litchfield, 244 Conn. 619,627, 711 A.2d 675 (1998). "In situations in which the zoning commission does state the reasons for its action, the question for the court to pass on is simply whether the reasons assigned are reasonably supported by the record and whether they are pertinent to the considerations which the commission is required to apply under the zoning regulations." Id., 629. See also R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice, (1993) § 30.3, page 519.
A zoning board of appeals' authority to grant a variance is found in Connecticut General Statutes § 8-6(a)(3). That section states in pertinent part: "The zoning board of appeals shall have the following powers and duties . . . (3) to determine and vary the application of the zoning bylaws, ordinances or regulations in harmony with their general purpose and intent and with due consideration for conserving the public health, safety, convenience, welfare and property values solely with respect to a parcel of land where, owing to conditions especially affecting such parcel but not affecting generally the district in which it is situated, a literal enforcement of such bylaws, ordinances or regulations would result in exceptional difficulty or unusual hardship so that substantial justice will be done and the public safety and welfare secured. . . ."
For a variance to be granted under General Statutes §8-6(3), two conditions must be met: (1) the variance must be shown not to substantially affect the comprehensive zoning plan, and (2) adherence to the strict letter of the zoning ordinance must be shown to cause unusual hardship. Bloom v. Zoning Board ofAppeals, supra, 233 Conn. 207. If the use to be allowed by the variance is consistent with other uses in the area, the first segment of the variance test is met. Egan v. Zoning Board ofAppeals, 20 Conn. App. 561, 564 (1990). CT Page 2251
"An applicant for a variance must show that, because of some peculiar characteristic of his property, the strict application of the zoning regulation produces an unusual hardship, as opposed to the general impact which the regulation has on other properties in the zone." Reid v. Zoning Board of Appeals,235 Conn. 850, 857, 670 A.2d 1271 (1996). "The hardship which justifies a board of zoning appeals in granting a variance must be one that originates in the zoning ordinance . . . and arises directly out of the application of the ordinance to circumstances or conditions beyond the control of the party involved." Kaeserv. Zoning Board of Appeals, 218 Conn. 438, 445 (1991).
"Variances cannot be personal in nature, and may be based only upon property conditions. . . ." Reid v. Zoning Board ofAppeals, supra, 235 Conn. 857. "Personal hardships, regardless of how compelling or how far beyond the control of the individual applicant, do not provide sufficient grounds for granting a variance." Id.
"Where the hardship involved arises as a result of a voluntary act by one other than the one whom the variance will benefit, the board may, in the exercise of its liberal discretion, grant the variance." Pollard v. Zoning Board ofAppeals, 186 Conn. 32, 35, (1982). "Where the claimed hardship arises from the applicant's voluntary act, however, a zoning board lacks the power to grant a variance." Id.
The plaintiffs claim that the board acted illegally, arbitrarily and in abuse of the discretion vested in it. The plaintiffs argue that this court should sustain the appeal for several reasons. First, the plaintiffs argue that any hardship that the Stedners and Crocamo have is a self-inflicted hardship in that the encroachment on lot #2 by the lot #1 house is the result of voluntary acts by the Crocamos. The plaintiffs argue that this self-inflicted hardship has nothing to do with the property itself and that, moreover, the Stedners were very well aware of this hardship. According to the plaintiffs, the fact that lot #2 was deeded to the Stedners does not change the self-inflicted hardship created by the predecessors in title. Furthermore, the plaintiffs argue that a variance would not shrink a pre-existing nonconformity, but would rather expand that nonconformity.
The plaintiffs also argue that the ZBA's decision is CT Page 2252 erroneous. Specifically, the plaintiffs point out that the record shows that the ZBA acted on a withdrawn application for a variance and not the application that was before the board. Since the actions of the ZBA were erroneous, the plaintiffs argue that the variance should be set aside and the appeal sustained.
The defendants argue that the ZBA properly granted a variance under the circumstances of this case. The defendants argue that the hardship, the encroachment of the lot #1 home onto lot #2, was not self-created in that the error did not occur as a result of a voluntary act of the Stedners or the predecessors in title to their property. Specifically, the defendants contend that the general contractor hired by Genevieve Crocamo, Leo Pigaty, hired a surveyor as a subcontractor. It was this subcontractor that mistakenly placed the surveying stakes in a erroneous position so as to create the encroachment onto lot #2. The defendants argue that the hardship is compounded by the fact that the Crocamos were not aware of this error until several years later. Though the City of Derby Zoning Ordinance contains a savings clause, the applicants argue that the delay in discovering the error cost them a chance to make use of the savings clause.
Therefore, the defendants argue that, although the variance may increase the nonconformity of lot #2, it is necessary to ensure that the lot #2 property is to be used as the free standing building lot it has been taxed as for some thirty years. Without the variance, the defendants argue, the property of the Stedners is, in effect, practically rendered useless and creates an-economic hardship that the board may appropriately consider. Moreover, without the variance, the defendants argue that Lot #1 is also hampered as that property is burdened with the encroachment on lot #2 .
Finally, the defendants argue that though parts of the record may suggest that the wrong application was acted upon, the record as a whole demonstrates that the ZBA was concerned with the correct application throughout the hearings, and ultimately acted on the application that was before them.
Accordingly, the defendants maintain that the plaintiffs' appeal should be dismissed.
The ZBA's decision to grant the variance provides that "[t]he hardship on this application is the lot was created in 1964 prior to zoning, the house on lot #1 was inadvertently built 10 feet CT Page 2253 into lot #2." (ROR, #43, p. 2.; #21.) "In situations in which the zoning commission does state the reasons for its action, the question for the court to pass on is simply whether the reasons assigned are reasonably supported by the record and whether they are pertinent to the considerations which the commission is required to apply under the zoning regulations." Irwin v.Planning Zoning Commission of the Town of Litchfield, supra,244 Conn. 629.
Based on the record before this court, it is submitted that the record supports the ZBA's reason for granting the application. The record indicates that Angelo E. Dirienzo created the three lot subdivision in 1964 with the approval of the Derby Board of Alderman. (ROR, #11; #41, p. 6.) At that time, there were three resident zones, with the largest, "A Residence," requiring a minimum 15,000 square foot area. (Revised Ordinances, City of Derby, 1938, Rev. to. 1969.) All three of the lots created in Dirienzo's subdivision met that requirement. (ROR, #41.) When the 1969 Zoning Ordinance came into effect, these lots became nonconforming lots protected by General Statutes § 8-2.[3]
"Where . . . the hardship is created by enactment of a zoning ordinance and the owner of the parcel could have sought a variance, a subsequent purchaser has the same right to seek a variance and, if his request is supported in law, to obtain the variance." Kulak v. Zoning Board of Appeals, 184 Conn. 479, 482,440 A.2d 183 (1981). Thus, the nonconforming aspect of the lot #2 hardship arises directly out of the application of the ordinance to circumstances or conditions beyond the control of the party involved in that property that becomes nonconforming by reason of the enactment of zoning regulations is not considered a hardship that is self-inflicted. Archambault v. Wadlow, 25 Conn. App. 375,382, 594 A.2d 1015 (1991). In this aspect, it would appear that the Stedners would have had a right to build on the nonconforming lot without need of variance. See R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice, (1998 Sup., § 52.1.
The present case, however, is complicated by the fact that the variance also sought to change the boundary lines between lots #1 and #2 so as to remedy lot #1's encroachment onto lot #2. As with the undersized lot nonconformity, the record supports the ZBA's conclusion that this encroachment constitutes a valid hardship. CT Page 2254
The evidence in the record suggests that the house on lot #1 was inadvertently built onto lot #2. (ROR, #41, p. 20, 21.) The record demonstrates that Genevieve Crocamo hired an architect, Leo Pigaty, for the construction of the home on lot #1. Pigaty's high-quality work was known throughout the area and Pigaty had an esteemed reputation. (ROR, #41, p. 20, 21.) Thus, the ZBA found that Pigaty's decision to hire a surveyor as a subcontractor, and that surveyor's subsequent mistake in staking the boundaries of the house, was not the fault of Mrs. Crocamo and therefore not a hardship that was self-created.
In Osborne v. Zoning Board of Appeals; 41 Conn. App. 351,353, 675 A.2d 917 (1996)(ROR, #8.); the ZBA made a similar finding. In Osborne, the appellate court held that the evidence before the board was such that the trial court was in error in holding that the applicant's act of hiring an architect, who in turn hired a negligent surveyor, was a self-created hardship that prohibited the granting of a variance. Id. 353-54. Cf. Lim v.Zoning Board of Appeals, Superior Court, judicial district of Danbury, Docket No. 328834 (March 24, 1998, Radcliff, J.) (holding that the Osborne case was inapplicable because evidence showed that the individual responsible for the error in surveying was in the direct employ of the landowner). Presented with a factual situation very similar to Osborne in that the defendants hired a contractor who in turn hired a subcontractor, the ZBA, in the present case, could have found that the encroachment of lot #1 on lot #2 was not a self-created hardship caused by the acts of the holder in title or their predecessors.
Regardless, the plaintiffs argue that the variance increases the nonconformity of the land and, as a result, the court should sustain the appeal. Specifically, the plaintiffs argue that the variance would increase the nonconformity-from the original lot of some 15,000 square feet (already 5,000 less than zoning requirements) to some 13,500.
Whether the zoning board of appeals can grant a variance to extend a nonconforming use depends upon the provisions of the local zoning regulations. R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice, (1993) § 52-2, p. 843. The City of Derby Zoning Regulations provide that a "nonconforming use shall not be enlarged or extended, except as provided in section 25-14 (b)." City of Derby Zoning Ordinance, 1969, § 25-11(c). CT Page 2255
Derby Zoning Ordinance § 25-14(b)(1)(a), allows a variance where strict enforcement of the regulations would result in exceptional difficulty or unusual hardship. As already stated, lot #1 and lot #2 was subject to a hardship in that lot #1 involuntarily encroached on lot #2, an already nonconforming lot.
The record also shows that the ZBA heard testimony that without the variance, the encroachment of lot #1 would be a burden in the future should the owners of lot #1 ever decide to sell the property. (ROR, #41, p. 24.) Conversely, with the variance, there was evidence before the board to suggest that lot #1 would become nearly conforming.
Furthermore, the record shows that the ZBA heard evidence that lot #2 was subject to taxes as a free standing building lot for nearly thirty years and that, without the variance, the lot #2 property would remain vacant in spite of its original permitted use as a residential lot. (ROR, #10; #41, p. 19-20.) Even though an applicant's financial hardship, in itself, is not sufficient to warrant the granting of a variance; Carlson v.Zoning Board of Appeals, 158 Conn. 86, 89, 255 A.2d 841 (1969); the ZBA could have found that the peculiar financial circumstances of the present case did contribute to a further hardship. "A practical confiscation occurs when an ordinance so limits the use of land that it cannot be utilized for any permitted purpose without a variance. . . . In determining whether a zoning regulation is unreasonable and confiscatory as to a piece of property, the court must consider the facts and circumstances of each case. . . . Namely, the court should examine the diminution in the value of land, the nature and degree of public harm to be prevented, and the alternatives available to the landowner . . ." (Citations omitted).Archimbault v. Wadlow, supra, 25 Conn. App. 382.
Accordingly, the record supports the ZBA's granting of a variance extending the nonconformity of a parcel of land. The ZBA's power to grant a variance in such circumstances is specifically authorized by City of Derby Ordinances §§ 25-11(c) and 25-14(b)(1)(a). The court, accordingly, finds that the plaintiffs' argument should not be granted on the ground that the record does not support the finding of a hardship.
The plaintiff also argues that the appeal should be sustained because the record reveals that the ZBA acted on the wrong application and granted a variance on an application that was CT Page 2256 withdrawn. Specifically, the plaintiff points to the ZBA's vote on April 24, 1997 in the record as illustrative of the fact that the wrong application was granted.
The record references a total of three applications. The first two, numbers 1073 and 1074 were submitted at the same time by Joseph Crocamo. (ROR, #34.) The first was submitted on behalf of his wife, Genevieve, the title holder to lot #1, while the second one was submitted on behalf of Joyce and James Stedner, the holders to lot #2. These applications sought a lot variance of 7,427 feet, a side variance of 10 feet and the relocation of the property lines between lot #1 and lot #2. (ROR, #34.) The record indicates that both applications were withdrawn without prejudice. (ROR, #35, p. 2.) Following the withdrawal of the application, the Stedners filed a new application, #1087, that was heard by the ZBA on February 6, 1997 and March 27, 1997.
The stated description of the variance prior to the deciding vote gives the appearance that the ZBA may have acted on the withdrawn applications, #1073 and 1074.[4] The record as a whole, however, reveals that the ZBA was considering application # 1087. For example, the record reflects that the ZBA was concerned with the latest application before it and not the applications that were withdrawn. The proposed lot revision plan states that following the variance, lot #2 is to consist of 13,714 square feet, a figure that is consistent with application #1087. (ROR, #5; #12.) Previous plans for the withdrawn application sought a greater variance, with lot #2 consisting of 12, 753 square. (ROR, #19.) The minutes for the ZBA meetings for March 27, 1997, April 24, 1997, September 26, 1996, October 24, 1996, December 19, 1996, January 9, 1997 and February 6, 1997, all refer to the application #1087 as "Joyce Jeffrey Stedner owners, property at Cullen's Hill Rd. requests lot area variance of 6, 286 sq. ft. and lot width variance of 51 sq. ft." (ROR, #20; #21; #28; #29; #31; #32; #33.) All discussion in during these meetings, with the exception of the example cited by the plaintiff, shows that the ZBA was considering application #1087. (See ROR, #39, p. 2; #41, p. 5; #42, p. 2.)
There is also further evidence in the record and the pleadings before the court to suggest that the ZBA's voting on the incorrect application was a simple mistake or moment of confusion. During the appeal before this court, Mancini, J., on September 3, 1998, the former chairman of the ZBA, William Eustace, testified that the inconsistency of the April 24, 1997 CT Page 2257 vote was resolved when the correct variances sought (lot area variance of 6, 286 sq. ft and lot width variance of 51 ft.) in the #1087 application were published in local newspaper and the Lands Records of the City of Derby. (Testimony of William Eustace, September 3, 1997, pp. 14-19.) Moreover, the plaintiffs' actual pleadings describe the variance granted as exactly the one the Stedners applied for in application #1087. (Appeal from Zoning Board of Appeals, dated May 8, 1997, ¶ 1.)
From these additional facts, it seems obvious that the ZBA did not consider the incorrect application. Though the ZBA may have expressed some confusion with the several applications at the time of the vote, the record as a whole indicates that the ZBA was well aware of the application they were acting on. The fact that published notice is consistent with application #1087 reaffirms that fact. Moreover, Eustace indicated that the post-hearing notice of the board's decision did not refer to the withdrawn application, but rather stated the figures sought by Stedners in the latest application before the board.
This court finds that the plaintiff's appeal should not be granted on this basis because the record indicates that the ZBA acted on the correct application.
The court finds, therefore, that the record and the cumulative evidence before the court shows that the ZBA did not act on the withdrawn application but rather correctly considered the relevant application before the board.
As the record supports the ZBA' s conclusion that the applicants were victims of a hardship, the ZBA' s granting of a variance is supported by the record as a whole. This court dismisses the plaintiff's appeal.
BY THE COURT,
Philip E. Mancini, Jr. Judge Trial Referee