[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION MOTION FOR SUMMARY JUDGMENT
Pursuant to Practice Book § 17-44, the defendants Town of East Haven and East Having Zoning Board of Appeals ("East Haven") have moved for summary judgment claiming that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law.
By way of complaint dated November 18, 1997, the plaintiff filed the present action alleging a taking under Article First, Section 11 of the Connecticut Constitution, and theFifth Amendment of the United States Constitution as applied to the states through the United States Constitution's Fourteenth Amendment's Due Process Clause.
The defendants East Haven contend that no genuine issue of material facts exist in that: (1) the plaintiffs claims are not ripe for judicial review; (2) the takings issue has been precluded by the actions of the zoning board; (3) the land in question retains some value, so no takings have occurred; (4) the plaintiff did not have a reasonable investment backed expectation thereby prohibiting a takings claim; (5) the zoning board lacked statutory authority to grant the variance because any hardship suffered by the plaintiff was self-created; (6) the Connecticut "practical confiscation" test for takings is the same as the Federal test for a takings claim, requiring the land to be without value; and (7) the Connecticut "balancing test" weighs in favor of the defendants.
A summary of prior legal procedures between the present parties involving the same real property is necessary in determining the present issues before the court.
The Estate of Savino Caponera owns a back lot located at 284 Short Beach Road in East Haven. (Mr. Caponera will be referred to as "Caponera," and his estate will be referred to as the "estate.") The lot, which has an area of six acres, is zoned for residential use but is CT Page 14378 undeveloped. The primary problem is the lot's frontage, or lack thereof, on Short Beach Road. The lot is separated from Short Beach Road by other property facing the road. When Caponera purchased the lot in 1972, he obtained a right of way on a driveway going through the adjoining land to Short Beach Road. The frontage of this right of way on Short Beach Road is 30 feet. The minimum lot frontage required by the East Haven Zoning Regulations is 80 feet. The minimum dimension of a square on the lot is also 80 feet pursuant to the East Haven Zoning Regulations, § 25.2.
The record establishes that two applications were made to the East Haven Zoning Board of Appeals ("ZBA") for variances prior to the application in question here. In 1986, Caponera proposed a four-lot subdivision and requested a variance of the 80 foot minimum lot frontage to 30 feet. He additionally requested a variance of the minimum square requirement. The ZBA denied this request on February 25, 1987.
In 1994, the estate applied to the ZBA for a variance of the minimum lot frontage to 30 feet. According to the estates complaint, filed in a subsequent judicial appeal, the 1994 application "thereby implicitly [requested] a variance as to square on lot if required." Estate ofCamponera v. Zoning Board of Appeals, No. 364166 (New Haven J.D.) (complaint dated August 4, 1994). This application was denied on July 21, 1994.
The estate appealed the denial of the 1994 application to the Superior Court. On November 17, 1995, the Court (Booth, J.) dismissed the action because it had been brought in the name of the estate rather than of the administrator. Estate of Caponera v. Zoning Board of Appeals of the Townof East Haven, Superior Court, judicial district of New Haven at New Haven, Docket No. CV 940364166 (November 17, 1995) (Booth, J.),1995 Ct. Sup. 12520-E, 15 C.L.R. 391. This decision was not appealed.
Another application was filed on April 12, 1996. The variance requested was "Schedule B, 4 minimum lot, frontage 80 feet to 30 feet and Section 25-2 waiver of 80' lot within 25' ofset back from road requirement." The application was denied on May 16, 1996.
The estate, this time through its executor, filed a timely appeal to the superior court. A hearing was held on June 9, 1997. The appeal was dismissed, the court finding that there had been no material change in circumstances with regard to the plaintiffs property. In dismissing the plaintiffs appeal, Judge Blue stated as follows:
"In this case, the estate makes no claim that there has been a material change of external circumstances CT Page 14379 affecting the merits of its various applications filed since 1986. The question presented is whether the 1996 application now before the court was for a use that materially differed in nature and degree from either of its predecessors. Both the 1986 and the 1984 applications must be considered in this respect.
 The record establishes that the 1986 application was considered in the context of a request for a four-lot subdivision. The 1996 application (like the 1994 application) makes no mention of such a subdivision. Rather, the 1996 application (again like the 1994 application) was considered in the context of a request to build a single family house on the subject property. The 1996 application was thus for a use that materially differed in nature and degree from the 1986 application and was not precluded by the denial of the 1986 application.
The 1994 application, however, presents no such distinguishing characteristic. Like the 1996 application, it requested a variance of the 80 foot minimum lot frontage to 30 feet. At argument, the estate suggested that the applications were dissimilar because the 1996 application expressly requested a variance of the minimum square requirement whereas the 1994 application did not. As already mentioned, however, the complaint in the 1994 appeal (signed by the very attorney representing the estate in the present appeal) I characterized the 1994 application as "implicitly [requesting] a variance as to square on lot, it required . . ." Under these circumstances, there is no basis for a finding that the 1996 application was for a use that materially differed in nature and degree from the 1994 application. Moreover, to the extent that the 1996 application did differ from the 1994 application in expressly requesting a variance of the minimum square requirement, this additional request merely serves to make the 1996 application more objectionable rather than less. See Pieretti v. Mayor, 173 A.2d 296, 300
(N.J. 1961). In either case, therefore, the 1996 application was precluded by the denial of the 1994 application, there being no material change of circumstances between the two dates." CT Page 14380
Estate of Caponera v. Zoning Board of Appeals, Superior Court, judicial district of New Haven at New Haven, Docket No. 387959 (June 24, 1997) (Blue, J.), 1997 Ct. Sup. 6459. It is in this context that the court reviews the plaintiffs present claim, which is dated November 18, 1997.
"A Motion for Summary Judgment is designed to eliminate the delay and expense of litigating an issue where there is no real issue to be tried."Wilson v. New Haven, 213 Conn. 277, 279, 567 A.2d 829 (1989). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the non-moving party." HertzCorp. v. Federal Ins., Co., 245 Conn. 374, 381, 713 A.2d 820 (1998). In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any issues exist. Nolan v. Borkowski, 206 Conn. 495, 500, 538 A.2d 1031
(1988). The moving party has the burden of demonstrating the absence of any genuine issue of material fact. Hertz Corp. v. Federal Ins. Corp., supra, 245 Conn. 381. "The opposing party must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." Id. "A material fact is a fact which will make a difference in the result of a case." Suarez v. Dickmont Plastics Corp., 229 Conn. 99,639 A.2d 507 (1994). The test used by the court is to determine if the moving party would be entitled to a directed verdict if the same set of facts were presented at trial. Connell v. Colwell, 214 Conn. 242,246-47, 571 A.2d 116 (1990).
 I
The defendants East Haven first argue that the plaintiffs claim is not ripe for judicial review. The court agrees. "The plaintiff is not entitled to a judicial review of the merits of his regulatory takings claim until he has met the requirements of establishing the finality of the agency determination. . . . To demonstrate the requisite finality, a property owner asserting a regulatory takings claim bears the burden of proving that the relevant government entity will not allow any reasonable use of his property." Farncini v. Zoning Board of Appeals, 228 Conn. 785,639 A.2d 519 (1994); Port Clinton Associates v. Board of Selectman of theTown of Clinton, 217 Conn. 588, 587 A.2d 126 (1991); AF ConstructionCo., Inc. v. Zoning Board of Appeals, 60 Conn. App. 273, 759 A.2d 101
(2000).
The plaintiff, either individually or through his estate, has repeatedly requested that the defendant zoning board of appeals, grant a variance lowering the 80 foot lot frontage requirement to 30 feet. This does not demonstrate, as the defendant argues, that the defendants will CT Page 14381 not allow any reasonable use of the plaintiffs property. It only shows that the defendants will not grant the requested variance.
The plaintiff has claimed that his property cannot be used for any reasonable or proper purpose and that the zoning regulations and the denial of the requested variance "destroys or nullifies its value in that the plaintiff cannot use the property for anything except to leave it in its natural state." A successful taking claim under the Fifth Amendment
requires that the plaintiff must prove that the zoning regulations rendered the property valueless. The regulations must deprive an owner of "all economically beneficial or productive use of the land" to be a taking under the Fifth Amendment. Lucas v. South Carolina CoastalCouncil, 505 U.S. 1003, 1015 (1992). To be a total takings, a reduction in value to zero was necessary for compensation to be owed to an owner. Id. at 1030. In 1972, when the plaintiff purchased the land in question for $4,000 it was zoned as residential, the designation being R-2. This zone has not changed. The land had a fair market value of $4,000, the amount paid by the plaintiff. The plaintiff in the present matter claims a diminution in value, not a total reduction to zero. In fact, the plaintiff in opposing summary judgment does not dispute that it sold the property to a Kim Coppola for the sum of $24,000, representing an increase in value of 600% from the plaintiffs purchase price of $4,000. Thus, the plaintiffs claims of a taking either under the federal constitution or the practical confiscation test under the state constitution, must fail. While the property may have sold for a lesser value due to the denial of the plaintiffs request for a variance, the plaintiff did receive a large increase in value when it sold the property for $24,000. The plaintiff has failed to satisfy the standard for a federal constitution takings claim, as set forth in Lucas v. Carolina Coastal Council, 505 U.S. 1003
(1992). The plaintiff has failed to establish a taking under the practical confiscation test of the state constitution, as well.Brecciaroli v. Commissioner of Environmental Protection, 168 Conn. 349,355, 362 A.2d 948 (1975); see also Tondro, Terry J., Connecticut Land Use Regulation, at 18 (2nd ed. 1992).
 II
As a preliminary matter in a takings claim, a court must determine whether the party challenging the regulations had a reasonable investment backed expectation. Gil v. Inland Wetlands and Watercourses Agency of theTown of Greenwich, 219 Conn. 404, 593 A.2d 1368 (1991). "A regulation does not constitute a compensable taking if it does not infringe on such reasonable-backed expectations." Bauer v. Waste Management ofConnecticut, Inc. 234 Conn. 221, 257, 662 A.2d 1179 (1995). CT Page 14382
In the present case, the plaintiff purchased the land knowing the zoning regulations and the limits placed on building a dwelling on the land. He knew he would require a variance. "The granting of a variance must be reserved for exceptional circumstances." Bloom v. Zoning Board ofAppeals, 233 Conn. 198, 206-07, 658 A.2d 559 (1995). General Statutes § 8-6 has been interpreted by the courts to authorize the granting of a variance only when two conditions are satisfied. First, the variance must be shown not to affect substantially the comprehensive zoning plan. Second, adherence to the strict letter of the zoning ordinance must be shown to cause unusual hardship unnecessary to the carrying out of the general purpose of the zoning plan. "A mere economic hardship or a hardship that was self created, however, is insufficient to justify a variance; and neither financial loss nor the potential for financial gain is a proper basis for granting a variance." Id. "The financial enrichment of a property owner is not one of the controlling purposes of zoning."State National Bank v. Planning and Zoning Commission, 156 Conn. 99,102, 239 A.2d 528 (1968). The local zoning board "is endowed with a liberal discretion, and its actions are subject to review by the courts only to determine whether they were unreasonable, arbitrary or illegal."Francini v. Zoning Board of Appeals, 228 Conn. 785, 791, 639 A.2d 519
(1994).
The defendants were without authority to grant the requested variance because the plaintiff voluntarily assumed the hardship. Archambaelt v.Wadlow, 25 Conn. App. 375, 381, 594 A.2d 1015 (1991); see also General Statutes § 8-6 (3). "The land owner cannot now [after purchasing the land knowing the zoning conditions] be heard to complain that the zoning regulations are unjust." Abel v. Zoning Board of Appeals, 172 Conn. 286,291, 374 A.2d 227 (1977).
 III
Finally, the public interest benefitted, weighs heavily in favor of the denial of the variance. The Chief of the Fire Department expressed concerns that in the event of a fire, police, emergency personnel and firefighters would not be able to locate the proposed home in an expeditious manner and that the available fire equipment would not be sufficient to extinguish a fire at the proposed residence. This could cause serious danger and harm to the community. Important public interests can be found that outweigh a person's economic loss. See, e.g., Samp Mortar Lake Co. v. Town Planning and Zoning Commission,155 Conn. 310, 231 A.2d 649 (1967); State National Bank v. Planning andZoning Commission, 156 Conn. 99, 239 A.2d 528 (1968); Figarsky v.Historical District Commission of Norwich, 171 Conn. 198, 368 A.2d 163
(1976). "In short, a court balances the financial effects of a zoning CT Page 14383 regulation on a particular owner or owners which include realistic alternative uses of the land, against the health, safety and welfare of the community." D'Addario v. Planning and Zoning Commission,25 Conn. App. 137, 593 A.2d 511 (1997).
Accordingly, for the reasons set forth herein, the defendants' motion for summary judgment is hereby granted.
The Court
by ___________________
Arnold, J. CT Page 14384